STATE v. MATTHEW McCABE.

87 N. W. (2d) 360.

December 27, 1957—No. 37,207.

*Frederick Storlie,* for appellant.

*Charles A. Sawyer,* City Attorney, and *Milton Gershin,* Assistant City Attorney, for respondent.

Thomas Gallagher, Justice.

Defendant was tried and convicted in the municipal court of the city of Minneapolis, first for driving an automobile while under the influence of intoxicating liquor, and second for his failure to notify the Minneapolis Police Department of an accident resulting in personal injury, both contrary to city ordinances. Minneapolis City Charter and Ordinances (Perm. ed.) 9:1-303, 9:1-1807. For the first offense he was sentenced to 90 days and his driver's license was revoked for a period of 2 years; and for the second he was fined $100, or in the alternative, sentenced to 30 days. On appeal he contends that the evidence is insufficient to support the finding of guilty in both instances.

The facts are as follows: About 3 p. m. of October 24, 1956, defendant, a real estate broker, proceeded in his car with Arthur Andreason to show the latter two houses which defendant was offering for sale on 51st Street and Penn Avenue North in Minneapolis. About 3:30 p. m. that date and after viewing the houses, defendant returned Andreason to 4158 Sheridan Avenue North where Andreason operated

a filling station. From there defendant drove through the alleyway between Sheridan and Thomas Avenue North. While proceeding through the alley, his automobile struck and severely injured Richard Coles of the age of 5 years. He stopped his car and carried the boy to the neighboring residence of a Mrs. Paulson, informing her of the accident and stating to her "* * * I got to get an ambulance or doctor or take him to a doctor."

He then requested that Mrs. Paulson telephone Andreason to bring a doctor at once. In the belief that his own son had been injured, Andreason hurried to the Paulson home without the doctor. Upon arriving there and ascertaining that the injured boy was not his son, he immediately left to procure a doctor.

Thereafter, before the doctor arrived, defendant drove his car from the scene of the accident and drove to his office at 3858 Thomas Avenue North. There, according to his testimony, he took two anacin tablets to relieve his tension; and thereafter he took from his office an unopened half pint of whiskey and proceeded to drive to his son's office about two blocks away where he consumed most of the whiskey.

Police Officer Robert Stanley Lindman, a witness for the state, testified that, in response to a radio call in his squad car about 3:47 p. m., he proceeded to the scene of the accident, talked to Mrs. Paulson, and left at once to locate and apprehend defendant. He arrived at the son's office at 4:10 p. m. and took defendant into custody. He asked defendant why he had left without reporting the accident and was told by defendant that he had done so because Andreason had so advised. This was denied by Andreason.

Defendant was then taken to city hall where, at 5 p. m., Officer William McKeand administered drunkometer and urinalysis tests which revealed that an alcoholic content of .22 of 1 percent was then present in defendant's blood stream. Both Lindman and McKeand testified that defendant's appearance indicated that he was heavily intoxicated at that time. McKeand, an expert in administering tests to determine extent of intoxication, expressed the opinion that it would be impossible for defendant to have such a high percentage of alcohol in his blood stream if he had consumed only a half pint of whiskey; and further, that, if the half pint was consumed by defendant as claimed by the

latter, its effect would have resulted in only .14 of 1 percent of blood alcohol by weight. He testified that defendant first told him he had been drinking beer only; that later he had stated that he only had had pop and at still another time had said that he was "loaded."

Andreason testified that neither he nor defendant had anything to drink prior to the accident. Defendant testified that he had not taken any liquor prior to the accident, and that the only liquor he had consumed was taken from the half-pint bottle after the accident. He admitted that when he was apprehended he was heavily intoxicated.

Lindman testified that in the police squad car after his arrest defendant, while heavily intoxicated, had told him that he had been drinking "Green River" in various amounts. No evidence was presented of the existence of a whiskey branded "Green River."

Defendant's son, Vernon McCabe, testified that he saw defendant shortly after the accident and before he had consumed the half pint of whiskey; and that, while his father was nervous, he was obviously "very sober" and not "under the influence of liquor at all." Defendant's wife testified that defendant had been home for lunch the day of the accident; that he had left there about 1:30 p. m.; and that at such times there was no evidence that he had been drinking.

■ The sole question raised by defendant is whether the evidence supports the finding of guilty. Violation of a municipal ordinance need not be proved beyond a reasonable doubt, a fair preponderance of the evidence being sufficient to sustain a finding of guilt. State v. End, 232 Minn. 266, 45 N. W. (2d) 378; State v. Jamieson, 211 Minn. 262, 300 N. W. 809; State v. Nelson, 157 Minn. 506, 196 N. W. 279.

■ This court has repeatedly held that the findings of a court in an action tried without a jury are entitled to the same weight as the verdict of a jury and will not be reversed on appeal unless they are manifestly contrary to the evidence. Lipinski v. Lipinski, 227 Minn. 511, 35 N. W. (2d) 708; Martens v. Martens, 211 Minn. 369, 1 N. W. (2d) 356.

■ Here the evidence seems amply sufficient to sustain defendant's conviction for failing to report the accident to the police department as required by the ordinance. It is obvious that he knew that the

boy who was struck by his car was seriously injured and would require hospitalization. His request that Mrs. Paulson call a doctor and his statement "* * * I got to get an ambulance or doctor or take him to a doctor" clearly manifests this. Whether he moved his car because of Andreason's suggestion or otherwise would not excuse his failure to notify the police of the accident involving serious personal injury as required by the terms of the ordinance.

■ As to whether he was intoxicated at the time of the accident, it is the opinion of this court that the evidence to sustain such a finding fairly preponderates. It is undisputed that defendant was heavily intoxicated at the time he was arrested by police shortly after the accident. While there is no direct evidence to the effect that he was intoxicated at the time of the accident, there is the tesimony of Officer McKeand that the alcoholic content manifested in defendant was such that intoxicants in addition to the whiskey in the half-pint bottle must have been consumed by defendant, since not enough time had elapsed to permit the latter to evidence itself to the extent indicated in the tests which were administered; and that had the full effect of the half-pint bottle of whiskey evidenced itself in defendant, the latter would not have had an alcoholic content of more than .14 of 1 percent. Opposed to such evidence is the testimony of defendant; his passenger, Andreason; his son; and his wife. In substance, their testimony was to the effect that defendant had not been drinking prior to the accident and was not intoxicated at the time it occurred.

It is generally recognized that the weight and credibility of expert testimony is for the jury's determination, Freeman v. Matson, 230 Minn. 261, 41 N. W. (2d) 249, and that the same tests applied in evaluating other evidence are also used in determining its weight and sufficiency. State v. Gorman, 219 Minn. 162, 17 N. W. (2d) 42. Whether the foundation therefor is sufficient and whether the evidence of an expert is material on the issue presented and will be of aid to the finders of fact are matters which rest largely within the discretion of the trial court. Detroit Lakes Realty Co. v. McKenzie, 204 Minn. 490, 284 N. W. 60.

So here in determining the issue of intoxication, it was incumbent upon the finder of fact to weigh the testimony of defendant's wit-

nesses as against the testimony of the expert; the evidence relating to all the surrounding circumstances; and the undisputed testimony that defendant was heavily intoxicated shortly after the accident. That he did so and resolved the doubt against defendant seems clear. Accordingly, his determination of the fact issue involved must be accepted as final.

The judgment is affirmed.

Affirmed.