## STATE v. NEILL LARRY HANSEN.

206 N. W. 2d 352.

April 6, 1973—No. 43484.

*C. Paul Jones*, State Public Defender, and *Philip Marron*, Assistant State Public Defender, for appellant.

*Warren Spannaus*, Attorney General, *Curtis D. Forslund*, Solicitor General, and *Kenneth E. Raschke, Jr.*, Special Assistant Attorney General, for respondent.

Heard before Knutson, C. J., and Otis, Todd, and Olson, JJ.

O. RUSSELL OLSON, JUSTICE.*

Defendant, convicted by a jury of unauthorized use of a motor vehicle, Minn. St. 609.55, escape from custody, Minn. St. 609.485, and criminal negligence resulting in death, Minn. St. 609.21, and sentenced for the maximum term on the conviction of criminal negligence, appeals from the judgment of conviction. Defendant assigns on appeal the following errors: (1) The results of the blood test should have been excluded due to inadequate foundation; (2) blood samples were taken from him in a manner which deprived him of his constitutional right to be free from unreasonable search and seizure; (3) all evidence of intoxication should have been excluded at trial where it was not pleaded in the information nor set forth in any bill of particulars; and (4) the arguments of the county attorney deprived defendant of a right to a fair and impartial trial.

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

We outline the facts in two statements for reasons apparent in this decision.

### Fact Statement No. 1

A Volkswagen, driven by defendant, with passengers Tom Cain, Paul Wick, Vicki Thompson, and Terry Hansen, defendant's brother, was observed on a public highway by law-enforcement officers at approximately 6:45 p.m. The officers had been notified earlier that there was a warrant for defendant's arrest on a bad check charge. It is not clear whether there was a signal from the law-enforcement officers; but in any event defendant stopped his car upon the highway, and the officers pulled up behind him. However, when the officers alighted from their squad car to approach defendant's vehicle, he sped away. The officers pursued defendant with emergency lights and siren activated. When the squad car pulled abreast of defendant's vehicle, defendant swerved toward the squad car, forcing it to return to rear pursuit. Additional squad cars were called by radio. Shortly thereafter, two police cars and a privately-owned car driven by a deputy sheriff boxed in defendant's vehicle by surrounding the Volkswagen in the front, on the left, and in the rear. Defendant did not even then stop his car but swerved his Volkswagen to the left, striking that squad car, and next colliding with the left rear fender of the deputy sheriff's vehicle to the front. Defendant's Volkswagen careened into the ditch and rolled over, and the deputy sheriff's vehicle slid and rolled over on the road. The arm of the officer in the lead car was pinned underneath his squad car, and emergency action to remove him was undertaken immediately. Defendant meanwhile attempted to flee on foot, was apprehended, and was placed in the back seat of the squad car, which could only be opened from the outside. A metal mesh grid separated the rear compartment from the front compartment of the squad car. A few minutes later, the officers observed the squad car speeding away. Meanwhile, the law-enforcement officers discovered Tom Cain, one of the original passengers in the

Volkswagen, lying dead in a shallow pool of water under the Volkswagen. The established cause of death was drowning.

Defendant turned himself in about 2 hours later after a series of radio contacts and a period of surveillance of his vehicle by law-enforcement officers. During that 2-hour interlude, defendant threatened to shoot himself with a shotgun which was in the squad car; however, after radio contact with his brother, defendant surrendered himself at approximately 9 p.m.

## Fact Statement No. 2

In the late forenoon and all afternoon of October 10, preceding the auto collision and 7 p.m. arrest, defendant, with Cain and two other drinking partners, consumed somewhere between 38 and 41 bottles of beer; evidence indicated defendant drank 5 to 6 bottles before 2 p.m., about 5 more bottles before 4:30 p.m., and another bottle before 6 p.m. Following his surrender and second arrest at 9 p.m., a sample of blood was taken from defendant's veins without his consent at 9:55 p.m. while he was being treated at the local county hospital. Results of the test showed .11 percent of alcohol in defendant's blood. Based upon the testimony elicited at the trial from competent experts it can reasonably be concluded that, assuming defendant consumed no alcoholic beverage after 6:45 p.m., defendant's blood at the time of the collision would have contained approximately .15 percent of alcohol. The eyewitness accounts as to defendant's condition as symptomatic of alcoholic intake at the time of the arrest and collision are ambiguous and conflicting. One layman, Daniel Triden, who observed defendant shortly before the collision and after 6 p.m., testified that he could not determine whether defendant had been drinking anything. Vicki Thompson, a passenger in the Volkswagen at the time of the collision, said defendant "wasn't sober, but he wasn't drunk." The fourth passenger was unable to express an opinion. One arresting officer stated he could smell the odor of alcohol but could not tell whether the defendant was drunk. One of the officers present at the collision scene said defendant walked "pretty straight."

In this appeal defendant challenges his criminal negligence conviction. Criminal negligence under Minn. St. 609.21 is the operation of a vehicle "in a grossly negligent manner," causing the death of a human being. In State v. Meany, 262 Minn. 491, 496, 115 N. W. 2d 247, 252 (1962), grossly negligent operation of a vehicle is defined as conduct evincing "very great negligence or without even scant care but not with such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong." [1] See, also, State v. Bolsinger, 221 Minn. 154, 21 N. W. 2d 480 (1946).

Viewing the facts as set out in the Fact Statement No. 1 alone, there is overwhelming evidence of criminally negligent conduct on the part of defendant immediately before his arrest on the roadside. Additionally, there was undisputed evidence of defendant's escape in the squad car immediately thereafter. The evidence clearly supports a jury finding of guilty on the criminal negligence charge as well as on the charges of unauthorized use of a motor vehicle and escape from lawful custody.

The evidence in Fact Statement No. 2 relates to defendant's alleged condition resulting from consumption of alcoholic intoxicants rather than his "grossly negligent" operation of his vehicle. Where there is such strong evidence of grossly negligent conduct apart from intoxication, the addition of evidence regarding intoxication merely serves to cloud the issue and adds little to the basis for conviction. Caution must be exercised that the misdemeanor criminal offense of operating a vehicle while under the influence of an alcoholic beverage as defined in Minn. St. 169.121, when coupled with negligent driving conduct which falls short of "grossly negligent" conduct, does not evolve and pyra-

---

[1] This definition arose when the statute on criminal negligence, Minn. St. 1961, § 169.11, included either grossly negligent conduct or reckless conduct. The 1963 criminal code recodification eliminated the second alternative of "reckless conduct" in the statutory offense. L. 1963, c. 753, art. 1, § 609.21. The definition, however, as enunciated in prior case law is still applicable.

mid into the felonious crime of criminal negligence simply because the death of a victim results. The legislature has not defined criminal negligence as the operation of a vehicle while under the influence of alcohol in a manner resulting in the death of a victim. Likewise, this court has never construed criminal negligence in that manner.

Defendant alleges four errors on appeal. He alleges first that the results of the blood test should have been excluded on the grounds the prosecution failed to show the defendant had not consumed any alcoholic beverage in the 3-hour interlude between the driving conduct resulting in death and the extraction of the blood sample. We conclude that the circumstances, including flight, justify the inference that defendant had not consumed alcohol during that 3-hour period. See, State v. McCabe, 251 Minn. 212, 87 N. W. 2d 360 (1957).

Also alleged as error is the extraction of the blood sample from defendant's veins without his consent, and, defendant contends, in violation of his constitutional rights against unreasonable search under the Fourth Amendment of the United States Constitution. In Schmerber v. California, 384 U. S. 757, 86 S. Ct. 1826, 16 L. ed. 2d 908 (1966), the United States Supreme Court indicated that the extraction of a blood sample under such circumstances does not violate the accused's rights under either the Fourth or Fifth Amendment. We are not presented with the question whether the taking of the blood sample without consent violates some other state statutory or constitutional right against such an intrusion upon the body.

A third alleged error is the failure of the prosecution to plead intoxication in the information. We simply note that no bill of particulars was requested and no objection was asserted, on the proffer of evidence relating to intoxication, on the grounds that it was not specifically pleaded in the information. Therefore, State v. Meany, *supra,* is not applicable on this issue.

Lastly, the alleged misconduct in final argument of the prosecutor does not justify a reversal. The argument appears to meet

48

the requirements in A. B. A. Project on Minimum Standards for Criminal Justice, The Prosecution Function and The Defense Function, The Prosecution Function, § 5.8 (Approved Draft, 1971).

Affirmed.