## CITY OF ST. PAUL v. THOMAS AZZONE AND OTHERS.

177 N. W. (2d) 559.

May 8, 1970—No. 41816.

*Stacker, Silverstein, Burke & Radsom* and *Thomas J. Burke,* for appellants.

*Robert E. O'Connell,* Corporation Counsel, and *Thomas M. Mooney,* Chief Prosecuting Attorney, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Theodore B. Knudson, JJ.

NELSON, JUSTICE.

Appeal from municipal court judgments of conviction of disorderly conduct and carrying a concealed weapon.

On November 30, 1969, members of an organization known as the "Hells Outcasts" Motorcycle Club, held a party in an apartment at 1496 Klainert. The apartment is in a housing project known as McDonough Homes and is one of 616 units in a

tightly compacted area. The apartment in question had been rented by Mrs. Lynn Farrington during the month of November. However, on November 27 Mrs. Farrington terminated her occupancy, taking with her her personal effects and furniture with the exception of a couch left in the basement. Although she locked the apartment, the record is not clear as to whether she had given anyone permission to use it at any time and specifically on the evening of the party. When asked for the key by members of the "Outcasts," Mrs. Farrington said she did not have it, suspecting that the club might try to use the apartment. She then asked a neighbor to call the police if a party began.

After receiving phone calls from two neighboring tenants, Mr. Neale Rawlings, the building manager, called the police. One of the tenants who called, Mrs. Janet Fredericks, testified that she was unable to get a babysitter because everyone was afraid. Mr. Rawlings accompanied the police to the unit where the party was in progress. Upon entering, the police officers found 40 people in the apartment with more than 20 cases of beer, wine, and hard liquor. They also found in the apartment an automatic pistol, several knives, chains, tear gas spray, razor blades, shells, and small arms ammunition, together with other articles.

The apartment itself was littered with cigarette butts, beer cans, and whiskey and wine bottles, and some of the window shades had been pulled over. The front door of the unit had been damaged.

The police placed those present at the party, including defendants herein, under arrest. Defendants offered no resistance to arrest with the exception of Michael Bartelmy, who objected to a search of his person. The search of Bartelmy revealed a projectile-type tear gas dispenser. Defendants were transported to the St. Paul Public Safety Building, where they were congregated in one room for purposes of booking. In front of the desk area several of defendants started a chant in which various vulgar and foul obscenities were directed at one of the arresting officers. An order by one of the officers for silence was ignored.

The shouting and chanting lasted for several minutes. Defendants were finally booked and jailed without physical resistance.

Defendants were charged under St. Paul Legislative Code, § 438.02, with two counts of disorderly conduct, one occurring at and in the vicinity of the apartment at 1496 Klainert, and the other occurring while they were entering the police station and during their booking. All were found guilty on one or both counts and sentenced to various workhouse terms and fines. Defendant Bartelmy was additionally charged with carrying a concealed weapon and was also found guilty on that count.

The following issues are presented for determination: (1) Does the evidence sustain the convictions under count one of disorderly conduct? (2) Is a group of persons who shout obscenities at arresting officers in the area of the police station and within it during the period of booking guilty of disorderly conduct? (3) Does the evidence sustain the conviction of defendant Bartelmy on the additional count of carrying a concealed weapon?

St. Paul Legislative Code, § 438.02, reads as follows:

"No person shall make, aid or countenance, or assist in making any noise, riot, disturbance or improper diversion, to the annoyance or disturbance of the citizens, or other persons in said city; nor collect in bodies or crowds in any street or public place in said city, so as to obstruct public travel thereon."

The term "disorderly conduct" has been defined as conduct of such a nature as will affect the peace and quiet of persons who may witness it and who may be disturbed or driven to resentment by it. State v. Cooper, 205 Minn. 333, 285 N. W. 903, 24 Minn. L. Rev. 132, 122 A. L. R. 727;[1] State v. Miller, 253 Minn. 112, 91 N. W. (2d) 138; State v. Reynolds, 243 Minn. 196, 66 N. W. (2d) 886; State v. Zanker, 179 Minn. 355, 229 N. W. 311. It is not necessary that actual commotion occur. It is sufficient if de-

---

[1] See, also, Chernov, *The Labor Injunction in Minnesota*, 24 Minn. L. Rev. 757, 790.

fendant's conduct is likely to annoy, disturb, or arouse anger. State v. Zanker, *supra;* State v. Miller, *supra.*

This court has frequently held that a violation of a city ordinance need be established only by a fair preponderance of the evidence. State v. Miller, *supra;* State v. McCabe, 251 Minn. 212, 87 N. W. (2d) 360. It is not necessary to prove violations of an ordinance beyond a reasonable doubt. State v. Thomas, 279 Minn. 326, 156 N. W. (2d) 745.

■ We are also governed by the rule that findings of a court in an action tried without a jury are entitled to the same weight as a jury verdict and will not be reversed on appeal unless the findings are manifestly against the evidence. State v. Miller, *supra.*

Applying the foregoing standards, we conclude that the evidence sustains defendants' convictions with regard to count one. The illegal presence of a great number of people, possessing a large quantity of alcohol, beer, and weapons, holding a party in a small vacated apartment, is inherently offensive, the probable and natural consequences of which violate the common sense of public order. In addition, however, actual disturbance was caused by defendants as evidenced by the inability of one tenant to procure a babysitter due to fear on the part of neighborhood residents. Finally, other residents in the area were made somewhat apprehensive by defendants' party.

.. ■ With regard to the second count of disorderly conduct, namely, the directing of obscene language toward police officers at the Public Safety Building, respondent city of St. Paul contends that City of St. Paul v. Morris, 258 Minn. 467, 104 N. W. (2d) 902, is controlling. In that case defendant shouted vile and obscene language at a police officer while the officer was arresting defendant's half brother outside a restaurant. There was no claim that persons other than the arresting officer had heard defendant's remarks. In upholding the defendant's conviction for disorderly conduct, this court stated (258 Minn. 468, 104 N. W. [2d] 903):

"* * * [L]egislation relating to disorderly conduct also embraces acts which corrupt the public morals or outrage the sense of public decency. Under the circumstances before us the foul, vulgar, and obscene expressions admittedly used by the defendant constituted conduct of such nature. While it is obvious that not every abusive epithet directed toward police officers would be sufficiently disturbing or provocative to justify arrest for disorderly conduct, there is no sound reason why officers must be subjected to indignities such as present here, indignities that go far beyond what any other citizen might reasonably be expected to endure."

The fact that the obscenities were used in the instant case in and around the confines of the police station is insignificant, since one of the purposes of the ordinance is to protect citizens, experienced in these matters or otherwise, from enduring such abuse in the course of their duties. Thus, the fact that the vile and abusive language was directed toward a policeman and was not overheard by members of the public does not prevent it from being a violation of the ordinance. See, Lane v. Collins, 29 Wis. (2d) 66, 138 N. W. (2d) 264; Duncan v. United States (D. C. App.) 219 A. (2d) 110, remanded on other grounds, 126 App. D. C. 371, 379 F. (2d) 148; City of St. Petersburg v. Calbeck (Fla. App.) 121 So. (2d) 814. See, also, the recent case of State v. Witherill, 286 Minn. 519, 174 N. W. (2d) 329, wherein this court sustained a conviction for directing foul and obscene language toward a police officer, which was followed by an immediate arrest; and State v. Leonard, 255 Iowa 1365, 124 N. W. (2d) 429; State v. Ceci (Del. Super.) 255 A. (2d) 700.

■ With regard to the third issue, we hold that the evidence is sufficient to sustain the additional conviction of defendant Bartelmy for carrying a concealed weapon in violation of St. Paul Legislative Code, § 425.01.

Affirmed as to all counts.