**STATE of Minnesota, Respondent,**

v.

**Richard Clarence ACKERMAN, Appellant.**

No. C2–85–1248.

Court of Appeals of Minnesota.

Feb. 11, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Harris I. Darling, Nobles Co. Atty., Kenneth J. Kohler, Asst. Nobles Co. Atty., Worthington, for respondent.

Michael W. Hanson, Bernardy, Scholl & Hanson, Worthington, for appellant.

Considered and decided by LANSING, P.J., and HUSPENI and LESLIE, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

A jury found appellant, Richard Ackerman, guilty of disorderly conduct under Minn.Stat. § 609.72, subd. 1(1), (3) (1984). On appeal, Ackerman argues that: (1) the trial court erred in admitting evidence of Ackerman's attempted suicide; (2) the trial court erred in not allowing defense counsel to recall Ackerman to the stand after the trial court changed its ruling on the suicide evidence; (3) there was insufficient evidence to support a conviction for disorderly conduct; and (4) the trial court erred in its jury instructions on disorderly conduct. We affirm.

## FACTS

Ackerman's conviction for disorderly conduct arose from an argument he had with Michelle Lupkes with whom he was living at the time. Ackerman was caring for their infant son while Lupkes attended classes at the local community college. He was angry that Lupkes had left him alone with the infant for so long and that the apartment was messy. When Lupkes returned Ackerman began shouting and swearing at her.

After the two had argued for some time, Lupkes went out to get cigarettes and call a friend, Kari Lewis. Lupkes asked Lewis to come over because she thought the presence of an outsider would calm Ackerman.

Kari Lewis and Jeff DeYoung came over to the apartment in response to Lupkes' phone call. Ackerman calmed down for a while and the four of them talked quietly. Then he became angry and started yelling again. At this point, Lupkes asked him to leave the apartment. Ackerman indicated that if she wanted him out it would take the police. DeYoung then called the police.

Initially, two police officers responded to the call. They told Ackerman that he would have to leave. He asked if he could pack some of his things and they agreed. Ackerman then proceeded to throw things into boxes and yell obscenities. While moving from room to room, Ackerman came into physical contact with one of the officers. There was conflicting testimony about whether Ackerman tripped over the baby's stroller or purposely shoved the officer into the wall. The officer told Ackerman he was under arrest.

A scuffle ensued and ended with Ackerman lying on his stomach on the floor with his hands underneath him. When the officers could not control Ackerman, they called for back-up. Two more officers responded and the four officers finally restrained Ackerman and handcuffed him. Ackerman yelled at the officers and threatened them while being transported to the police station.

At the police station, Ackerman was placed in a holding cell. While in the cell, he attempted to commit suicide by slitting his wrist with an electrical plate that he had torn off the wall. This injury required emergency medical treatment.

Before trial began, the trial court ruled that evidence of Ackerman's attempted suicide would not be admissible. Then, in the middle of Ackerman's case and after he had testified, the trial court decided that the suicide evidence was admissible. Defense counsel then attempted to recall Ackerman to the stand. The trial court did not allow it, saying Ackerman could be called on surrebuttal. Defense counsel then proceeded to call the other defense witnesses. Evidence of the suicide attempt was presented to the jury by the State's rebuttal witnesses. Ackerman testified on surrebuttal.

### ISSUES

1. Did the trial court abuse its discretion in admitting evidence of Ackerman's suicide attempt?

2. Did the trial court err in not allowing defense counsel to recall Ackerman to the stand until the defense's rebuttal, after the trial court had changed its ruling about the suicide evidence?

3. Is there sufficient evidence to support a conviction for disorderly conduct?

4. Did the trial court err in refusing to give Ackerman's requested instruction on what language can constitute disorderly conduct?

### ANALYSIS

#### I.

#### Evidence of Suicide Attempt

Ackerman argues that the evidence of his attempted suicide was irrelevant and that any probative value it had was outweighed by its potential for prejudice. The State contends that this evidence showed that Ackerman possessed a criminal intent at the time of the incident. The State claims this evidence was necessary to counter Ackerman's testimony that he was not fighting with the police officers, but only trying to get up and leave the apartment.

Evidence that in some degree advances the inquiry and therefore has probative value is relevant evidence and may be admitted. Minn.R.Evid. 401. If, however,

the danger of unfair prejudice substantially outweighs its probative value, the evidence may be excluded. Minn.R.Evid. 403. This determination rests within the sound discretion of the trial court and will only be reversed if the trial court abused its discretion. *State v. Olkon*, 299 N.W.2d 89, 101 (Minn.1980), *cert. denied*, 449 U.S. 1132, 101 S.Ct. 954, 67 L.Ed.2d 119 (1981). Our review of the record in this case does not reveal that the trial court abused its discretion by admitting evidence of Ackerman's suicide attempt.

## II.

### Ackerman's request to retake the witness stand

■ Ackerman argues that the trial court erred when it made Ackerman wait until surrebuttal to testify about his suicide attempt. The trial court's reversal of its earlier ruling regarding the suicide attempt came in the middle of the defense's presentation of its case.

When defense counsel attempted to recall Ackerman to the stand to testify about the suicide attempt, the following exchange took place:

THE COURT: Will Counsel approach the bench. (Whereupon the following conference was at the bench and out of the hearing of the Jury.)

THE COURT: Now, what is this baloney about recalling witnesses all the time here. You put them on and get their testimony in. That's it. What are you going to recall him for?

MR. HANSON: * * * [I]t was Defendant's position that that [evidence] would not be introduced in evidence. Since it is now today going to be allowed in evidence I think Mr. Ackerman is entitled to be able to testify about it and explain it.

THE COURT: Well, you can call him as a surrebuttal witness. There isn't any

testimony in the record of that right at this point.

We recognize that the trial court has discretion in managing its own courtroom. *State v. Collins*, 276 Minn. 459, 150 N.W.2d 850 (1967), *cert. denied*, 390 U.S. 960, 88 S.Ct. 1058, 19 L.Ed.2d 1156 (1968). However, the record does not show that defense counsel had been repeatedly recalling witnesses. Neither does the record show that allowing Ackerman to retake the stand would have caused any unnecessary confusion, consumption of time or harassment. *See* Minn.R.Evid. 611(a).

Ackerman has not, however, shown any prejudice caused by the trial court's conduct. If the trial court had ruled the evidence of the suicide attempt admissible before the trial commenced, the State would have presented the evidence to the jury just as it did when the trial court changed its ruling in midtrial.[1] Ackerman was given the opportunity to present evidence regarding the suicide attempt on surrebuttal. This evidence chronologically followed the State's presentation of that evidence, just as it would have if the State had presented the evidence in its case in chief.

## III.

### Sufficiency of the evidence

■ Ackerman argues that there is not sufficient evidence to support his conviction for disorderly conduct. The question on review is whether the jury could reasonably conclude from the evidence that the defendant was guilty while viewing the evidence in a light most favorable to the State. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978).

To support a conviction, the State must show that Ackerman knew or should have known that his conduct would alarm, anger or disturb others or would provoke an assault or breach of the peace. The conduct included in the applicable statute is: "(1) Engag[ing] in brawling or fighting; or * * *

1. The situation here is not one where the subject testimony could be used only for impeachment, as would be the case under Minn.R.Evid. 609 (evidence of conviction of crime).

(3) Engag[ing] in offensive, obscene, or abusive language or in boisterous and noisy conduct tending reasonably to arouse alarm, anger, or resentment in others."

Minn.Stat. § 609.72, subd. 1(1), (3) (1984).

There was sufficient evidence for a jury to reasonably conclude that Ackerman was guilty of disorderly conduct. Several witnesses testified that Ackerman was yelling and swearing at Michelle Lupkes. His conduct alarmed her enough that she called friends and asked them to come over. Those friends in turn were alarmed enough to call the police to have Ackerman removed from the apartment. There was testimony that Ackerman yelled obscenities at the police officers and threatened their lives. Also he wrestled with the officers, bit one officer and spit at another. There was also testimony that Ackerman fought with the officers when they tried to take him to the squad car.

Ackerman argues that police officers should expect to be exposed to such behavior and, therefore, the behavior cannot arouse alarm, anger or resentment. Whether particular conduct constitutes disorderly conduct depends on the facts and circumstances of each case. *State v. Reynolds*, 243 Minn. 196, 201, 66 N.W.2d 886, 890 (1954).

■ Abusive language and behavior that is directed at police officers may constitute disorderly conduct. In *City of St. Paul v. Azzone*, 287 Minn. 136, 177 N.W.2d 559 (1970), defendants chanted and directed obscenities at police officers while waiting to be booked. The court upheld their convictions for disorderly conduct and noted that:

> While it is obvious that not every abusive epithet directed toward police officers would be sufficiently disturbing or provocative to justify arrest for disorderly conduct, there is no sound reason why officers must be subjected to * * * indignities that go far beyond what any other citizen might reasonably be expected to endure.

*Azzone,* 287 Minn. at 141, 177 N.W.2d at 562 (quoting *City of St. Paul v. Morris,* 258 Minn. 467, 468–69, 104 N.W.2d 902, 903 (1960)). *See also State v. White,* 292 N.W.2d 16 (Minn.1980); *City of Minneapolis v. Larsen,* 354 N.W.2d 82 (Minn.Ct. App.1984).

■ In the present case, there was sufficient evidence for a jury to conclude that Ackerman's actions and words went beyond merely arguing with police officers and constituted disorderly conduct. *See id.* at 85.

## IV.

### Jury Instructions

■ Finally, Ackerman argues that the trial court erred in not instructing the jury that uttering "fuck you pigs" to police officers could not constitute disorderly conduct. His argument is based on *In re Welfare of S.L.J.,* 263 N.W.2d 412 (Minn. 1978), where the court held such words did not constitute fighting words.

The court in *S.L.J.* was careful to point out, however, that its holding was limited to the facts of that case, where the words were uttered by a fourteen-year-old girl. The police officers were in their squad car and fifteen to thirty feet from the child. The court noted that:

> With the words spoken in retreat from more than 15 feet away rather than eye-to-eye, there was no reasonable likelihood that they would tend to incite an immediate breach of the peace or to provoke violent reaction by an ordinary, reasonable person.

*S.L.J.,* 263 N.W.2d at 420.

The facts and circumstances of each case determine whether particular conduct constitutes disorderly conduct. *Reynolds,* 243 Minn. at 201, 66 N.W.2d at 890. Obscenities directed at a police officer may constitute disorderly conduct under certain circumstances. *Azzone,* 287 Minn. 136, 177 N.W.2d 559. Under the circumstances of this case, we find the trial court did not err

when it refused to instruct the jury as Ackerman requested.

## DECISION

The trial court did not abuse its discretion when it admitted evidence of Ackerman's suicide attempt.

The trial court did not commit prejudicial error when it refused to allow Ackerman to retake the witness stand until surrebuttal, after changing its ruling about the suicide evidence.

There is sufficient evidence to support Ackerman's conviction for disorderly conduct.

The trial court did not err when it refused to give Ackerman's requested jury instruction.

Affirmed.