**STATE of Minnesota, Respondent,**

v.

**Thomas Allen ZAIS, Appellant.**

No. A10–1020.

Supreme Court of Minnesota.

Oct. 26, 2011.

Lori Swanson, Attorney General, St. Paul, Minnesota; and Paul D. Baertschi, Tallen and Baertschi, Minneapolis, Minnesota, for respondent.

William Ward, Chief Hennepin County Public Defender, James A. Kamin, Assistant Public Defender, Minneapolis, Minnesota, for appellant.

## OPINION

DIETZEN, Justice.

This case requires us to decide what information the court should consider in determining whether the crime exception to the marital privilege statute in Minn. Stat. § 595.02, subd. 1(a) (2010), applies to the charged offense of disorderly conduct. Appellant Thomas Zais (Zais) was charged, in part, with the offense of disorderly conduct based on a November 15, 2009, incident. Before trial, Zais moved to exclude the proposed testimony of his wife on the ground that it was barred by the marital privilege. The district court concluded that the crime exception to the marital privilege did not apply to the charged offense of disorderly conduct, and therefore

his wife was barred from testifying against Zais without his consent. The State appealed the pretrial order, and the court of appeals reversed and remanded. We granted review on the issue of whether the crime exception to the marital privilege applies to the charged offense of disorderly conduct. Because the conduct underlying Zais's charged offense of disorderly conduct was directed at his wife, we conclude that the crime exception to the marital privilege applies. We therefore affirm the court of appeals.

The material facts are undisputed. The charges against Zais arose out of an incident at the Zaises' home on November 15, 2009. On the previous evening, police responded to a call from Zais's wife after Zais had pushed their daughter. Based on their investigation, the police told Zais's wife that Zais's conduct did not support a criminal charge. Following this incident, Zais left the house for the night, and his wife removed the garage door opener from Zais's truck so he could not reenter the house. According to his wife, Zais called the next afternoon and threatened to break into the house or "do whatever he had to to get in."

Around 6:30 p.m. on November 15, Zais's wife reported to the police that Zais was in their driveway in his pickup truck and was trying to break down the garage door. She stated that Zais had been drinking. Upon arrival, one officer saw a truck in the driveway and Zais standing by the garage door. Zais stated that his wife would not let him in the house, so he "knocked out some panels in the garage door" with a hook. Zais admitted that he had been drinking that afternoon. The officer administered field sobriety tests, which Zais failed. A preliminary breath test indicated that Zais had an alcohol concentration of .31, and a blood test later revealed Zais had an alcohol concentration of .23.

The State charged Zais with second-and third-degree DWI, Minn.Stat. §§ 169A.20, subds. 1(1) and 1(5) (2010), 169A.25 (2010), 169A.26 (2010); obstruction of legal process or arrest, Minn.Stat. § 609.50, subd. 1(2) (2010); careless driving, Minn.Stat. § 169.13, subd. 2 (2010); and disorderly conduct, Minn.Stat. § 609.72, subd. 1(3) (2010). Before trial, the State notified Zais that his wife was a proposed witness in the proceeding, and Zais moved to exclude her testimony based on the marital privilege in Minn.Stat. § 595.02, subd. 1(a). Following argument of the parties, the district court ruled that disorderly conduct "does not create a personal injury sufficient to destroy the spousal privilege," and therefore Zais's wife was prohibited from testifying against Zais without his consent. The State appealed.

In a published opinion, the court of appeals reversed and remanded, concluding that the State had established that the exclusion of the testimony of Zais's wife had a critical impact on its ability to prosecute Zais, and that the crime exception to the marital privilege in section 595.02, subdivision 1(a), applies to a prosecution for disorderly conduct if the underlying conduct "was directed at and adversely affected or endangered" the other spouse. *State v. Zais*, 790 N.W.2d 853, 857–64 (Minn.App.2010). Subsequently, we granted review on the issue of whether the crime exception to the marital privilege applies to the charged offense of disorderly conduct.

I.

 The State may appeal pretrial orders of the district court when the State can show that "the district court's alleged error, unless reversed, will have a critical impact on the outcome of the trial." Minn.

R.Crim. P. 28.04, subd. 2. The State has the burden of showing "clearly and un-equivocally (1) that the district court's ruling was erroneous and (2) that the ruling will have a 'critical impact' on the State's ability to prosecute the case." *State v. Underdahl,* 767 N.W.2d 677, 683 (Minn. 2009) (citing *State v. McLeod,* 705 N.W.2d 776, 784 (Minn.2005)).

 When a district court's order excludes evidence in a criminal prosecution, the State need not show that the exclusion destroys its case; rather, the State need only demonstrate that "excluding the evidence 'significantly reduces the likelihood of a successful prosecution.'" *McLeod,* 705 N.W.2d at 784 (quoting *State v. Joon Kyu Kim,* 398 N.W.2d 544, 551 (Minn.1987)). Moreover, the exclusion of evidence need not affect all charges against the defendant. It is enough if the exclusion affects the State's ability to prosecute a specific charge. *See Underdahl,* 767 N.W.2d at 684 (noting that "an order that dismisses DWI charges, even when other charges remain, will have a critical impact on the prosecution's case"); *State v. Hicks,* 301 Minn. 350, 352–53, 222 N.W.2d 345, 347 (1974) (concluding that an order preventing the chance of a successful prosecution on one charge was sufficient to allow an appeal even though the other charges were not affected). Finally, we consider the State's evidence as a whole when determining if the exclusion of evidence will reduce the likelihood of a successful prosecution, and generally, "unique" evidence is "more likely to meet the critical impact test." *In re Welfare of L.E.P.,* 594 N.W.2d 163, 168 (Minn.1999).

We conclude that excluding the testimony of Zais's wife would significantly reduce the State's ability to prosecute Zais for disorderly conduct. The elements of disorderly conduct include that a person engaged in certain conduct "knowing, or hav-ing reasonable grounds to know that it will, or will tend to, alarm, anger or disturb others." Minn.Stat. § 609.72, subd. 1 (2010). Zais's wife was the only eyewitness to Zais's conduct, and her testimony bears directly on whether the State can establish the elements of disorderly conduct. Without the testimony of Zais's wife, it will be much more difficult for the State to prove the element of disorderly conduct that Zais either knew or had reason to know that his conduct of breaking the panels of the garage door to enter the home would alarm, anger, or disturb another. *See id.* Consequently, we conclude that the critical impact test is met.

## II.

Zais argues that the crime exception to the marital privilege does not apply to the charged offense of disorderly conduct, and as a result, his wife may not testify against him. According to Zais, the crime exception does not apply because disorderly conduct is not a "crime committed by one [spouse] against the other."

 We review evidentiary rulings by a district court regarding the availability of a privilege established by statutory or common law for an abuse of discretion. *State v. Gianakos,* 644 N.W.2d 409, 415 (Minn.2002). But the initial determination of whether a particular testimonial privilege or exception exists as a matter of law is a question that we review de novo. *Id.* Statutory construction is also a question of law that we review de novo. *Zurich Am. Ins. Co. v. Bjelland,* 710 N.W.2d 64, 68 (Minn.2006) (citing *Am. Nat'l Gen. Ins. Co. v. Solum,* 641 N.W.2d 891, 895 (Minn. 2002)).

## A.

To answer the question presented, we first examine the scope of the marital privilege, and then determine the applicability

of the crime exception to the facts of this case. The marital privilege has its roots in common law, and it has been part of the statutes of Minnesota since at least 1851. *See* Rev. Stat. Terr. Minn. ch. 95, § 53 (1851); *Gianakos,* 644 N.W.2d at 415.

> The marital privilege statute provides:
> A husband cannot be examined for or against his wife without her consent, nor a wife for or against her husband without his consent, nor can either, during the marriage or afterwards, without the consent of the other, be examined as to any communication made by one to the other during the marriage.[1]

Minn.Stat. § 595.02, subd. 1(a) (footnote added). The statute also contains several exceptions to the marital privilege, including the crime exception. This exception provides that the marital privilege "does not apply to ... a criminal action or proceeding for a crime committed by one against the other." *Id.*

In *Huot v. Wise,* we held that the language of the marital privilege statute, and not the scope of the common law marital privilege, determined whether one spouse could testify against the other.[2] 27 Minn.

68, 69–70, 6 N.W. 425, 426 (1880). In *Huot,* we considered whether the wife was a competent witness for the defendant in a civil action brought by her husband. *Id.* at 69, 6 N.W. at 425. We examined the marital privilege, concluding that the inclusion of specific exceptions to the statute "excludes resort to the common law to determine how far the rule shall prevail, and what cases shall be excepted from it." *Id.* at 69–70, 6 N.W. at 426. As such, "it is immaterial that the common law did or did not ... admit the evidence of a wife against her husband, in a case like this." *Id.* at 70, 6 N.W. at 426. We concluded that the wife's testimony was not admissible because the circumstances were not within an exception to the statute. *Id.* at 70, 6 N.W. at 426. Under *Huot,* we must look to the language of the marital privilege statute to determine whether the crime exception would allow a spouse to testify against his or her spouse who has been charged with disorderly conduct.

### B.

We must next determine whether, under the facts of this case, the crime of disor-

---

1. The statute has two distinct privileges: (1) "the privilege to prevent one spouse from testifying against the other during their marriage" (the marital testimony privilege); and (2) "the privilege to prevent one spouse from testifying at any time, during the marriage or after, concerning confidential interspousal communications during the marriage" (the marital communications privilege). *Gianakos,* 644 N.W.2d at 416. The privilege at issue in this case is the marital testimony privilege. The crime exception, however, applies equally to both types of the marital privilege.

2. Early cases addressed the issue of whether common law or the language of the statute determined the scope of the privilege. In *State v. Armstrong,* we considered whether adultery was a crime committed by a husband against his wife, such that his wife could testify against him. 4 Minn. 335, 342–43 (Gil.

251, 258–59) (1860). We concluded that adultery did not fall under the crime exception, because adultery was not a crime against the wife's person and involved "no violence to, or abuse of her." *Id.* at 343 (Gil. at 259). There is language in *Armstrong* suggesting that the crime exception in the marital privilege statute was intended to codify the common law standard regarding when a spouse could testify against the other. *Id.* at 342 (Gil. at 258) (stating that the crime exception included in the marital privilege statute was "inserted simply to save those cases where, at common law, a wife could be a witness against her husband, ... and not to introduce any new rule, or extend the old one"). Our subsequent decision in *Huot,* however, confirmed that the language of the statute controls any analysis of whether one spouse may testify against the other.

derly conduct is a crime committed by one spouse against the other spouse. Zais argues that the applicability of the crime exception to a particular crime should be determined solely by the elements of the crime. The State counters that the court must examine the underlying conduct that the defendant is alleged to have committed to determine whether the crime exception is applicable.

The applicability of a statute to undisputed facts is a question of law for the court that requires construction of the statute. *See City of Morris v. Sax Invs., Inc.*, 749 N.W.2d 1, 5 (Minn.2008). The goal of all statutory construction is to effectuate the intent of the Legislature. Minn.Stat. § 645.16 (2010). In construing the language of a statute, we give words and phrases their plain and ordinary meaning. Minn.Stat. § 645.08(1) (2010); *Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn.1999). Thus, if the language of a statute is clear and free from ambiguity, our role is to apply the language of the statute, and not explore the spirit or purpose of the law. Minn.Stat. § 645.16. A statute is ambiguous if it is susceptible to more than one reasonable interpretation. *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000). Generally, the marital privilege is construed narrowly and the exceptions are construed broadly. *See Larson v. Montpetit*, 275 Minn. 394, 402, 147 N.W.2d 580, 586 (1966).

The crime exception provides that one spouse may testify in "a criminal action or proceeding for a crime committed by one [spouse] against the other." Minn.Stat. § 595.02, subd. 1(a). Previously, we have applied the crime exception, but in those cases, the application of the crime exception was largely undisputed. *See, e.g., State v. Cram*, 718 N.W.2d 898, 904 n. 2 (Minn.2006) (concluding that in a prosecution of a husband for the murder of his wife, statements made by the wife to the husband were admissible). Moreover, early cases did not address whether the court should review the elements of the crime, the underlying conduct, or both, to determine whether the crime exception applies. *See Armstrong*, 4 Minn. at 342–43 (Gil. at 258–59).

It is undisputed that the prosecution of Zais for the charged offense of disorderly conduct satisfies the requirement of "a criminal action or proceeding." [3] The crux of the dispute turns on what information the court should consider in determining whether the crime exception to the marital privilege statute in section 595.02, subdivision 1(a), applies to the charged offense of disorderly conduct.

We conclude that the crime exception to the marital privilege statute in section 595.02, subdivision 1(a), is not ambiguous, and requires that the court examine not only the elements of the crime, but also the underlying conduct of the defendant to determine whether the crime was "committed" by one spouse against the other. The word "committed" broadly refers to acts or conduct done by one spouse against the other spouse. *See The American Heritage Dictionary of the English Language* 371 (4th ed.2000) (defining "commit" as "[t]o do, perform, or perpetrate"). The plain language of the statute contemplates that the court consider all relevant underlying facts to make that de-

---

3. Minnesota Statutes § 609.02, subd. 1 (2010), defines a crime as "conduct which is prohibited by statute and for which the actor may be sentenced to imprisonment, with or without a fine." *Accord. Black's Law Dictionary* 399 (8th ed.2004) (defining a crime as "[a]n act that the law makes punishable"). *See generally* Minn.Stat. ch. 609 (2010) (defining specific crimes).

termination. Because few, if any, crimes have as an element that certain conduct be directed at a spouse, the relevant underlying facts must be considered to determine if a crime was committed against the defendant's spouse. Had the Legislature intended to limit the court's analysis to examining only the elements of the crime in the abstract, it could have easily done so by including specific limiting language to that effect.

Our conclusion is also consistent with other cases in which we have interpreted the meaning of crimes committed "against a person." In *State v. Nunn*, we considered the meaning of a felony-murder requirement that the underlying felony must have been "upon or affecting the person whose death was caused." 297 N.W.2d 752, 753 (Minn.1980). We concluded that to evaluate whether a felony was "upon or affecting" a person and posed a "special danger to human life," the preferred approach was to consider "not just the elements of the felony in the abstract but the facts of the particular case and the circumstances under which the felony was committed." *Id.* at 754.

Similarly, in *State v. Notch*, we considered the meaning of "crime against a person" under a sentencing guidelines provision allowing permissive consecutive sentencing when "the offender is convicted of multiple current felony convictions for *crimes against different persons.*" 446 N.W.2d 383, 385 (Minn.1989). We concluded that a crime is against the person "if, as committed, it is a crime against the person." *Id.* Thus, a court could evaluate the underlying conduct of the felony to determine whether it was a crime against a person. *Id.; see also State v. Myers*, 627 N.W.2d 58, 62–63 (Minn.2001) (concluding that obstructing legal process could be a crime against a person, pursuant to the sentencing guide-

lines, if the defendant's underlying conduct in committing the offense "poses a special danger to human life").

Accordingly, we conclude that the crime exception to the marital privilege contemplates that the court must examine not only the elements of the crime charged, but also the underlying conduct supporting the crime to determine whether the crime charged was "committed by one [spouse] against the other."

## C.

Zais also argues that the charged offense of disorderly conduct cannot be considered a crime committed by one spouse against the other because it is a public offense committed against the public at large and not a specific individual. According to Zais, the crime exception only applies to crimes directed at a person, such as assault or domestic violence. The State counters that the conduct supporting the disorderly conduct charge may be committed by one spouse against the other, and therefore the crime exception applies.

To answer this question, we must examine the statutory requirements for the charged offense of disorderly conduct. Minnesota Statutes § 609.72, subd. 1(3), provides, in relevant part, that a person commits disorderly conduct if he or she:

> knowing, or having reasonable grounds to know that it will, or will tend to, alarm, anger or disturb others ... (3) engages in offensive, obscene, abusive, boisterous, or noisy conduct or in offensive, obscene, or abusive language tending reasonably to arouse alarm, anger, or resentment in others.

The statute does not require that "others" are actually affected, but does contemplate that such a result could occur as a consequence of the disorderly conduct

itself.[4] The disorderly conduct statute also indicates that the crime may be committed "in a public or private place."[5] *Id.*

■ Moreover, the crime may be committed when there is only one witness to the defendant's conduct. *See City of Saint Paul v. Azzone,* 287 Minn. 136, 140–41, 177 N.W.2d 559, 562 (1970); *State v. Reynolds,* 243 Minn. 196, 202, 66 N.W.2d 886, 891 (1954). In *Reynolds,* we held that the disorderly conduct statute, Minn.Stat. § 615.17 (1953), was constitutional and not void for vagueness. 243 Minn. at 198–99, 66 N.W.2d at 888–89. In doing so, we stated:

> If the statute does not require that the act be committed in a public place or a specified place, then it is sufficient if the act is committed within the confines of the jurisdiction of the court, and, dependent upon the circumstances, it may be enough if the peace of only one person is disturbed.

*Id.* at 202, 66 N.W.2d at 891. And in *Azzone,* we sustained convictions for disorderly conduct in violation of Saint Paul Legislative Code § 438.02 (1970), when the conduct was directed toward a police officer and not observed by the public. 287 Minn. at 140–41, 177 N.W.2d at 562.

■ We conclude that the crime exception to the marital privilege applies to the charged offense of disorderly conduct when the alleged conduct is committed by one spouse against the other spouse. The disorderly conduct statute does not exclude conduct that is directed against one person. Consequently, we conclude that the crime exception may be applicable to the charged offense of disorderly conduct in this case.[6]

## D.

■ Finally, we consider whether the State's proposed evidence[7] regarding the

---

4. The word "others" in section 609.72, subdivision 1(3), is in the plural. But under the canons of statutory construction, the plural also contemplates the singular. *See* Minn. Stat. § 645.08(2) (2010) (stating that, in statutory construction, "[t]he singular includes the plural; and the plural, the singular"); *see also Laase v. 2007 Chevrolet Tahoe,* 776 N.W.2d 431, 435–36 (Minn.2009) (utilizing the canon that "the singular includes the plural" to ascertain the plain meaning of a statute). Other provisions of the disorderly conduct statute also directly apply to an individual. Minn.Stat. § 609.72, subd. 3 (2010) (stating that disorderly conduct includes conduct that is committed by a caregiver "against a vulnerable adult"). Thus, the disorderly conduct statute does not exclude conduct directed against one individual.

5. The dissent relies on an inapplicable comment of the Advisory Committee on Revision of the Criminal Law to the Legislature to argue that the disorderly conduct statute does not apply to family quarrels "at a private home." *Infra* p. D–43 (emphasis added). The comment states: "A family quarrel *in* a private home would not be sufficient although it may be in the presence of [other persons]

also in the home." Advisory Committee on Revision of the Criminal Law, Proposed Minnesota Criminal Code § 609.72 cmt. (1963) (emphasis added). Notably, the comment is directed at a "family quarrel" that occurs *in a private home.* Zais's conduct of breaking through the garage door to enter a private home was not merely a family quarrel that occurred inside the private home. Rather, it was a public disturbance that occurred outside the home and involved breaking a garage door to gain entry into the home.

6. The State requests that we address whether Zais's wife may testify on the other crimes charged against Zais—specifically, the DWI charges. This issue was not addressed by the district court or the court of appeals, nor was it raised by the parties before the district court. The State's brief to the court of appeals addresses this issue in one paragraph and neither party raised this issue in the petition for review or response. Therefore, the issue of the extent to which the privilege applies is not properly before us. *See George v. Estate of Baker,* 724 N.W.2d 1, 7 (Minn. 2006) (stating the court "will generally not address issues that were not specifically raised in the petition for review").

elements of the disorderly conduct charge, together with Zais's actual conduct, establish that the crime was committed by one spouse against the other. The district court examined the elements of disorderly conduct, but not the underlying conduct of the defendant, and therefore applied the wrong legal test. Instead, a district court should examine the elements of the offense together with the defendant-spouse's underlying conduct to determine whether the record establishes that the defendant-spouse's acts were done against the other spouse. If so, the offense of disorderly conduct was committed by one spouse against the other.

The State's proposed evidence establishes that there was a domestic dispute at Zais's home the night before the incident in question, during which Zais pushed his daughter and his wife called the police. When Zais left the house in a friend's car, his wife took the garage door opener out of Zais's truck so he would not be able to reenter the home. The next day, Zais called his wife and "threatened to break into the house or do whatever he had to to get in." When Zais appeared at the house after he threatened to break in and began breaking the garage door, Zais's wife immediately called 911. She also heard Zais banging on the garage door. The police

saw that panels had been broken out of the garage door, and Zais told an officer his wife would not let him back inside the house and that he broke the garage door panels with a hook to get inside the house.

Based upon the proposed evidence the State has established that Zais committed the offense of disorderly conduct against his wife. Zais's conduct was done against and directed at his wife.[8] He engaged in "abusive, boisterous, or noisy conduct" by banging on and breaking off several panels of his garage door at a time when his wife was home.[9] *See* Minn. § 609.72, subd. 1(3). And Zais forcibly tried to enter the home shortly after making threatening comments to his wife. Specifically, Zais broke the panels of the garage door to gain access to the house knowing, or having reason to know, that doing so would alarm, anger, or disturb another—his wife.[10] *See id.* Accordingly, we conclude that the crime exception to the marital privilege is applicable to the disorderly conduct charge against Zais. Therefore, we hold that Zais's wife may testify against Zais on the disorderly conduct charge.

Affirmed.

PAGE, Justice (dissenting).

I respectfully dissent. In order to appeal a district court's pretrial order, the State must "explain[ ] how the district

---

7. The State's proposed evidence consists of a written offer of proof and a police report.

8. We note that Zais did not dispute any of these facts before the district court when the State asserted that the crime exception to the marital privilege applied in this case. As a result, there are no factual disputes that must be resolved by the district court before a determination can be made as to whether the marital privilege applies.

9. The dissent raises an interesting question of whether Zais needed his wife's consent to enter the house. *See, e.g., State v. Spence,* 768 N.W.2d 104, 108–10 (Minn.2009) (affirming

burglary conviction where co-owner of a single-family residence entered the house without the consent of the co-owner in possession). But this issue is not before us, and therefore we decline to reach it. *See George,* 724 N.W.2d at 7 (stating the court "will generally not address issues that were not specifically raised in the petition for review").

10. Ultimately, it will be up to the jury to determine what facts the State has proven and whether the State has proven beyond a reasonable doubt that Zais committed disorderly conduct.

court's alleged error, unless reversed, will have a critical impact on the outcome of the trial." Minn. R.Crim. P. 28.04, subd. 2. The State must "clearly and unequivocally [demonstrate] (1) that the district court's ruling was erroneous and (2) that the ruling will have a 'critical impact' on the State's ability to prosecute the case." *State v. Underdahl,* 767 N.W.2d 677, 683 (Minn.2009) (citing *State v. McLeod,* 705 N.W.2d 776, 784 (Minn.2005)). Because the State cannot clearly and unequivocally demonstrate that the district court's ruling was erroneous, I conclude that the State may not appeal the district court's order and would reverse the court of appeals.

The trial court excluded Debra Zais's testimony because of the marital privilege. The marital privilege provides, in relevant part:

> A husband cannot be examined for or against his wife without her consent, nor a wife for or against her husband without his consent, nor can either, during the marriage or afterwards, without the consent of the other, be examined as to any communication made by one to the other during the marriage.

Minn.Stat. § 595.02, subd. 1(a) (2010). However, the marital privilege does not apply "to a criminal action or proceeding for a crime committed by one [spouse] against the other." *Id.* Our court concludes that the marital privilege exception for crimes committed by one spouse against the other bars application of the privilege in this case.

With regard to the disorderly conduct charge, the undisputed facts are as follows. On November 14, 2009, a dispute occurred at the Zaises' home, after which Zais left the home for the night and Debra Zais, his wife, removed the garage door opener from his truck so he could not reenter the home. Debra Zais claims that Zais called the next afternoon and threatened to break into the house or "do whatever he had to to get in." The following evening, Debra Zais called the police, reporting that Zais had been drinking and was attempting to break down the garage door of their home. Upon their arrival, the police saw a truck in the driveway and Zais standing by the garage door. Zais indicated to the officers that he "knocked out some panels in the garage door" because Debra Zais would not let him in the house. On that basis, Zais was charged with disorderly conduct. In short, Zais was charged with disorderly conduct for attempting to enter his own home.

I begin by noting that, on the facts presented, it is unclear that Zais committed the crime of disorderly conduct against his spouse. Absent such a showing, the privilege applies to preclude Debra Zais's testimony. If the privilege applies, Debra Zais's testimony is, by its nature, inadmissible and as a result the exclusion of her testimony cannot have a critical impact. As alleged, Zais's disorderly conduct was his attempt to enter his home. There were no protective or other orders in place excluding Zais from his home. Thus, as an owner of the home, Zais had a right to enter and "possess" the home. That is to say that, with respect to the home, Zais had "at all times the right to enter upon and enjoy every part of the common estate." *Petraborg v. Zontelli,* 217 Minn. 536, 540, 15 N.W.2d 174, 177 (1944). Zais's right to possession of the home included "the aggregate of rights that give a person the fullest power to enjoy, *destroy,* or dispose of a thing; one of these rights is to possess the thing." Bryan E. Garner, *A Dictionary of Modern Legal Usage* 673 (2d ed.1995) (emphasis added). Given these rights, it is not clear that his attempt to enter his home by breaking in constituted the crime of disorderly conduct, much less disorderly conduct against Debra Zais.

Nor is it clear based on the Advisory Committee Comments to the 1963 Criminal Code, which I find instructive. Minnesota Statutes § 609.72, subdivision 1(3) (2010), provides:

> Whoever does any of the following in a public or private place, including on a school bus, knowing, or having reasonable grounds to know that it will, or will tend to, alarm, anger or disturb others or provoke an assault or breach of the peace, is guilty of disorderly conduct, which is a misdemeanor:
>
> . . . .
>
> (3) engages in offensive, obscene, abusive, boisterous, or noisy conduct or in offensive, obscene, or abusive language tending reasonably to arouse alarm, anger, or resentment in others.

With respect to section 609.72, subdivision 1(3)'s, application, the Advisory Committee Comment to the statute states:

> Two important qualifications are specified. The defendant must know or have reasonable grounds to know that his behavior will alarm, anger or disturb others. This is but an application of the principle that criminal liability should be based on fault. The second qualification is that "others" must be affected by the behavior. It is not sufficient that a single person or, depending on circumstances, only a few have grounds to complain. "Others" must be construed in the light of the objectives of the offense. *A family quarrel in a private home would not be sufficient although it may be in the presence of the children or of other relatives or of visitors also in the home.* But if passersby or neighbors were reasonably alarmed, angered or disturbed, the offense would be committed.

Advisory Committee on Revision of the Criminal Law, Proposed Minnesota Criminal Code § 609.72 cmt. (1963) (emphasis added). It seems to me that the facts of this case fit squarely within the category of cases the Advisory Committee indicated are outside the scope of the crime of disorderly conduct. In light of the Advisory Committee Comment and the fact that the charge here arises out of "[a] family quarrel" at a private home, I would conclude, in light of the objectives of the offense of disorderly conduct, that the exclusion of Debra Zais's testimony does not meet the critical impact test because the State cannot establish that Zais's conduct tended "reasonably to arouse alarm, anger, or resentment in *others*." (Emphasis added.)

Finally, the court is simply wrong when it suggests that Debra Zais's expected testimony would support "the element of disorderly conduct that Zais either knew or had reason to know that his conduct of breaking the panels of the garage door to enter the home would alarm, anger, or disturb another." Implicit in that statement is the notion that the conduct underlying the disorderly conduct charge was directed at Debra Zais and that the conduct alarmed, angered, or disturbed Debra Zais.

The court's reasoning misperceives whatever alarm, anger, or disturbance Debra Zais may have felt. In opposing the application of the marital privilege by the trial court, the State argued that:

> If called to testify, Mrs. Zais would testify that the defendant got into an argument with his 15 year old daughter on [November 14] and pushed her. Mr. Zais left the home and Mrs. Zais took his garage remote. On the day of the incident, November 15, 2009, Mrs. Zais reported that she believed her husband was heading toward a bar in Maple Grove. Mrs. Zais reported to the police and would testify that Mr. Zais called her and stated he was going to come over to the house and break in if neces-

sary. Mrs. Zais told police in a recorded statement that she was afraid of Mr. Zais. Evidence suggested that the defendant in fact broke two panels off the garage door in an effort to break in. Because Mrs. Zais was fearful, she called 911. Mr. Zais is charged with disorderly conduct and DWI offenses.

Thus, it is clear from the State's offer of proof that it was not the fact that Zais broke the garage door panels that alarmed, angered, or disturbed Debra Zais,[1] it was the fear that if Zais successfully entered the home she would be on the receiving end of more of his abusive behavior. Given the source of her fear, it cannot be said that Zais's act of breaking the garage door panels was the source of Debra Zais's alarm, anger, or disturbance, or that the alleged disorderly conduct involved a crime by Zais against Debra Zais. Therefore, the trial court's decision to apply the marital privilege to bar Debra Zais's testimony was not erroneous. Further, because Debra Zais's testimony was inadmissible because of the marital privilege, the trial court's exclusion of that testimony did not have a critical impact on the State's ability to prosecute Zais for disorderly conduct.[2]

---

1. That it was not Zais's act of breaking the garage door panels that caused Debra Zais to be alarmed, angered, or disturbed can best be illustrated by changing the facts just slightly. If, instead of Debra Zais having locked Zais out of their home, the two of them had returned home after an evening out only to discover that their garage door was not working because of a power outage and their house keys were locked inside the house, there would have been no fear on the part of Debra Zais even though the conduct was the same as that which gave rise to the disorderly conduct charge. That is to say, under those circumstances, if Zais "broke two panels off the garage door in an effort to break in," there would be no cause for Debra Zais to be alarmed, angered, or disturbed.

2. Interestingly, during oral argument counsel for the State conceded that the State's purpose in having Debra Zais testify was to obtain her testimony regarding the driving-while-impaired offense.