*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0069**

State of Minnesota,
Respondent,

vs.

Tondalia Dubose,
Appellant.

**Filed December 28, 2015
Affirmed
Schellhas, Judge**

Hennepin County District Court
File No. 27-CR-14-17870

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Susan L. Segal, Minneapolis City Attorney, Sarah Becker, Assistant City Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Rodenberg, Judge; and Reilly, Judge.

**UNPUBLISHED OPINION**

**SCHELLHAS**, Judge

Appellant challenges her convictions of trespass, disorderly conduct, and obstructing legal process, arguing that the evidence was insufficient to prove her guilt beyond a reasonable doubt. We affirm.

**FACTS**

On the night of June 23, 2014, appellant Tondalia Dubose was in the vestibule area of a grocery store, yelling and swearing into a cell phone. Minneapolis Police Officer Jordan Davis, who was working at the store as an off-duty uniformed officer, approached Dubose and instructed her to leave the store. Dubose refused. Officer Davis used a "soft empty hand" technique to direct Dubose towards the exit and repeatedly instructed her to leave the store. Dubose exited the store but remained outside the vestibule on the store premises. When Officer Davis instructed Dubose to leave the premises, pushing her away from the store, Dubose swore at him. Officer Davis then informed Dubose that she was under arrest and directed her to put her hands behind her back, holding his mace in a "low ready" position. Initially, Dubose complied, turning her back to Officer Davis, but when Officer Davis attempted to handcuff Dubose, she was verbally defiant and pulled away. Officer Davis then maced Dubose, used a take-down technique to pin her to the ground, and used a "joint manipulation" technique to induce her compliance, handcuff her, and complete her custodial arrest.

Respondent State of Minnesota ultimately charged Dubose with trespass under Minn. Stat. § 609.605, subd. 1(b)(3) (2012); disorderly conduct under Minn. Stat. § 609.72,

subd. 1(3) (2012); disorderly conduct under Minneapolis, Minn., Code of Ordinances (MCO) § 385.90 (1960); and obstructing legal process under Minn. Stat. § 609.50, subd. 1(2) (2012). The district court conducted a bench trial and heard testimony from the store manager; Officer Davis; and Dubose's friend, E.G., who witnessed the incident. The court also received in evidence a video-only recording of the grocery-store incident (surveillance video). The court found Dubose guilty as charged and sentenced her to 45 days in the workhouse, with execution of 35 days stayed for a year. This appeal follows.

## D E C I S I O N

"[Appellate courts] use the same standard of review in bench trials and in jury trials in evaluating the sufficiency of the evidence." *State v. Palmer*, 803 N.W.2d 727, 733 (Minn. 2011). "When reviewing the sufficiency of the evidence [appellate courts] must determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient to allow a [fact-finder] to reach a guilty verdict." *State v. Hurd*, 819 N.W.2d 591, 598 (Minn. 2012) (quotation omitted). Appellate courts assume that the fact-finder disbelieved any testimony that conflicted with the verdict. *Id.* "[Appellate courts] will not overturn a guilty verdict if, giving due regard to the presumption of innocence and the prosecution's burden of proving guilt beyond a reasonable doubt, the [fact-finder] could reasonably have found the defendant guilty of the charged offense." *Id.* (quotation omitted). The fact-finder is in the best position to weigh credibility and determine which witnesses to believe and how much weight to give their testimony. *Id.* "An appellate court will not substitute its judgment as to witness credibility." *State v. Barber*, 494 N.W.2d 497, 503 (Minn. App. 1993), *review denied* (Minn. Feb. 25, 1993).

In this case, Dubose generally argues that the state's evidence failed to prove beyond a reasonable doubt that she committed trespass, engaged in disorderly conduct, or obstructed legal process. Dubose attempts to advance her argument by attacking the credibility of Officer Davis and pointing to supposedly exculpatory testimony by E.G. But the district court specifically found that Officer Davis provided credible, detailed testimony regarding the incident and that the officer's testimony was consistent with the surveillance video. The court also found that E.G. "provided some credible testimony, but was not believable in several instances," and that her testimony was inconsistent with the surveillance video "in a couple of important regards."

Dubose's only sufficiency-of-the-evidence argument is based on her assertion that Officer Davis's testimony was not credible. Not surprisingly, Dubose argues that an appellate court's deference to a district court's credibility determinations "is not without limitation." But Dubose does not cite to any legal authority that directs us to second-guess the district court's credibility determinations in this case. We therefore will affirm if the state's evidence was sufficient to prove every element of the four crimes of conviction beyond a reasonable doubt.

*Trespass*

Anyone who "trespasses on the premises of another and, without claim of right, refuses to depart from the premises on demand of the lawful possessor" is guilty of trespass. Minn. Stat. § 609.605, subd. 1(b) (2012). A demand to depart from the premises may be made by an agent of the lawful possessor. *State v. Quinnell*, 277 Minn. 63, 68, 151 N.W.2d 598, 602–03 (1967).

4

Here, the state presented the following evidence as relevant to the charge of trespass. Dubose was physically present on premises owned by the grocery store. Officer Davis, who was authorized by store management to demand a person's departure from the store premises, instructed Dubose multiple times to leave the premises. Dubose refused to leave the premises, did not leave the premises until she was arrested and removed, and made no claim of right for her refusal to depart. This evidence was sufficient to prove every element of trespass beyond a reasonable doubt. *See* Minn. Stat. § 609.605, subd. 1(b).

*Disorderly conduct*

Anyone who "engages in offensive, obscene, abusive, boisterous, or noisy conduct or in offensive, obscene, or abusive language tending reasonably to arouse alarm, anger, or resentment in others" is guilty of disorderly conduct if she "know[s], or ha[s] reasonable grounds to know that it will, or will tend to, alarm, anger or disturb others or provoke an assault or breach of the peace." Minn. Stat. § 609.72, subd. 1 (2012). Similarly, "[n]o person . . . shall engage in . . . any riot, fight, brawl, tumultuous conduct, act of violence, or any other conduct which disturbs the peace and quiet of another . . . ." MCO § 385.90.

"The Minnesota Supreme Court has ruled that a conviction of disorderly conduct cannot be predicated only on a person's words unless those words are 'fighting words.'" *State v. McCarthy*, 659 N.W.2d 808, 810–11 (Minn. App. 2003) (quoting *In re Welfare of S.L.J.*, 263 N.W.2d 412, 419 (Minn. 1978)). But a disorderly-conduct conviction may be predicated on words that are not fighting words but which, "coupled with [the speaker's] conduct and physical movements," and "measure[d] . . . as a package against the

controlling statute," *see id.* at 811 (quotation omitted), "tend[] reasonably to arouse alarm, anger, or resentment in others," *see* Minn. Stat. § 609.72, subd. 1.

> Although the disorderly conduct statute prohibits only fighting words as applied to speech *content*, the disorderly shouting of otherwise protected speech or engaging in other boisterous or noisy *conduct* may still trigger punishment under the statute . . . . In that circumstance, it is not the speech itself that triggers punishment; the statute may be applied to punish the manner of delivery of speech when the disorderly nature of the speech does not depend on its content.

*In re Welfare of T.L.S.*, 713 N.W.2d 877, 881 (Minn. App. 2006) (quotation marks omitted). Finally, "[i]t is not necessary that actual commotion occur. It is sufficient if defendant's conduct is likely to annoy, disturb, or arouse anger." *City of St. Paul v. Azzone*, 287 Minn. 136, 139–40, 177 N.W.2d 559, 561–62 (1970).

Here, the state presented the following evidence that was relevant to the charges of disorderly conduct. Dubose was in the vestibule area of the grocery store, yelling and swearing into a cell phone in an angry and hostile manner. At this time, Dubose's voice had a volume of seven or eight on a ten-point scale, with "ten being emergency screaming." When told to leave the store by Officer Davis, Dubose refused to leave and "said, 'I don't have to f-cking go nowhere,' or something to that effect." After exiting the vestibule and remaining on the store premises, despite being told to leave the premises by Officer Davis, Dubose "sa[id], 'F-ck you. I don't have to leave. You can't tell me what do to [sic]. Don't touch me. Don't f-cking put your hands on me,' things of that nature." And when Officer Davis tried to handcuff Dubose, Dubose pulled away from Officer Davis and "said something [like], 'Nope, you're not going to'—'you're not going to take me, you're not

6

going to arrest me,' something to that effect." During the incident, "a constant stream of people [were] coming in and out of th[e] store," and some of the people appeared to take notice of the "package" of Dubose's words, physical movements, and conduct. This evidence was sufficient to prove every element of disorderly conduct beyond a reasonable doubt. *See* Minn. Stat. § 609.72, subd. 1; MCO § 385.90.

*Obstructing legal process*

"Whoever intentionally . . . obstructs, resists, or interferes with a peace officer while the officer is engaged in the performance of official duties" is guilty of obstructing legal process. Minn. Stat. § 609.50, subd. 1 (2012). "[Section 609.50] forbids intentional physical obstruction or interference with a police officer in the performance of his official duties." *State v. Ihle*, 640 N.W.2d 910, 915 (Minn. 2002) (quotation omitted). "[P]hysically obstructing or interfering with a police officer involves not merely interrupting an officer but substantially frustrating or hindering the officer in the performance of his duties." *State v. Krawsky*, 426 N.W.2d 875, 877 (Minn. 1988). A peace officer may engage in the performance of official duties during the course of private employment. *Cf. State v. Childs*, 269 N.W.2d 25, 26–27 (Minn. 1978) (concluding that city police officer, who effected arrest while working during off-duty hours as security officer for drugstore, acted in "dual capacity" as both peace officer and privately employed security officer).

Here, the state presented the following evidence as relevant to the charge of obstructing legal process. Officer Davis—a uniformed, licensed peace officer with the Minneapolis Police Department—informed Dubose that she was under arrest and directed her to put her hands behind her back. Dubose initially complied, turning her back to Officer

7

Davis, but when Officer Davis tried to handcuff Dubose, she expressed verbal defiance and pulled away from Officer Davis. Officer Davis then maced Dubose, used a take-down technique to pin her to the ground, and used a "joint manipulation" technique to induce her compliance, after which Officer Davis handcuffed Dubose and completed a custodial arrest. It takes Officer Davis about "[f]ive seconds, if that," to handcuff "someone who's being cooperative," and it took Officer Davis about 20 seconds to handcuff Dubose. Officer Davis also testified that, by pulling away from him when he tried to handcuff her, Dubose "absolutely" interfered with his job by necessitating his application of force to complete the arrest. This evidence was sufficient to prove every element of obstructing legal process beyond a reasonable doubt. *See* Minn. Stat. § 609.50, subd. 1.

**Affirmed.**