STATE OF MINNESOTA

IN SUPREME COURT

A23-1284

Court of Appeals

Energy Transfer LP (formerly known as
Energy Transfer Equity, L.P.), et al.,

Appellants,

vs.

Greenpeace International (also known as
Stichting Greenpeace Council), et al.,

Defendants,

Unicorn Riot, et al.,

Respondents.

McKeig, J.
Took no part, Gaïtas, J.

Filed: July 16, 2025
Office of Appellate Courts

_____

Richard D. Snyder, Fredrikson & Byron, P.A., Minneapolis, Minnesota; and

Lawrence Bender, Fredrikson & Byron, P.A., Bismarck, North Dakota, for appellants.

Matthew R. Segal, American Civil Liberties Union Foundation, Boston, Massachusetts;

Teresa J. Nelson, Alicia L. Granse, American Civil Liberties Union of Minnesota, Minneapolis, Minnesota; and

Ryan R. Simatic, Biersdorf & Associates, P.A., Minneapolis, Minnesota, for respondents.

Mahesha P. Subbaraman, Subbaraman PLLC, Minneapolis, Minnesota, for amicus curiae The Forum for Constitutional Rights.

Mark R. Anfinson, Minneapolis, Minnesota, for amici curiae Reporters Committee for Freedom of the Press, Minnesota Newspaper Association, St. Paul Pioneer Press, Sahan Journal, Silha Center for the Study of Media Ethics and Law, and E.W. Scripps Co.

_____

1

S Y L L A B U S

1.    The Minnesota Free Flow of Information Act does not contain an exception—beyond the statutory exceptions contained in Minn. Stat. §§ 595.024–.025 (2024)—for newsgatherers who allegedly engage in unlawful or tortious conduct of the kind presented in this case.

2.    The Minnesota Free Flow of Information Act does not prohibit the district court from ordering production of a privilege log.

Affirmed in part, reversed in part, and remanded to the district court.

O P I N I O N

McKEIG, Justice.

The Minnesota Free Flow of Information Act (MFFIA), Minn. Stat. §§ 595.021–.025 (2024), protects newsgatherers from being required in any proceeding to disclose confidential sources, the means by which they obtained any information, and unpublished information.  The parties ask us to decide whether the MFFIA applies when a newsgatherer engages in unlawful or tortious conduct while reporting.  We hold that the MFFIA does apply where, as here, there is no allegation that the newsgatherer's purportedly unlawful or tortious conduct falls within the specific statutory exceptions in Minn. Stat. §§ 595.024–.025.  We also evaluate whether and under what circumstances a district court may order a newsgatherer claiming privilege under the MFFIA to produce a privilege log.  We hold that the MFFIA does not prevent district courts from ever ordering a privilege log, but caution that district courts should carefully consider whether producing

2

a privilege log when a party claims privilege under the MFFIA would impose an undue burden on the responding party.

This case arises from a North Dakota lawsuit filed by appellants, Energy Transfer, LP, Energy Transfer Operating, LP, and Dakota Access LLC,[1] against Greenpeace International and several other defendants. The North Dakota suit arises from the defendants' alleged actions related to the 2016 protests over the Dakota Access Pipeline. Unicorn Riot, a Minnesota-based news organization, and member-journalist Niko Georgiades were present at and reported on the protests. Believing that Unicorn Riot has documents and information relevant to the North Dakota suit, Energy Transfer served subpoenas duces tecum on Unicorn Riot and Georgiades seeking information related to the protests. Unicorn Riot and Georgiades objected to the subpoenas, directing Energy Transfer to its published materials and claiming that all other potentially responsive documents are privileged. Energy Transfer filed a motion to compel Unicorn Riot and Georgiades to produce the requested documents. The proceedings surrounding that motion and Unicorn Riot's and Georgiades's continued objections to Energy Transfer's requests are the basis for our decision today.

**FACTS**

In 2014, Energy Transfer announced the development and construction of the Dakota Access Pipeline ("DAPL"), a 1,172-mile underground oil pipeline that would cross

---

[1]     Appellants are three corporate entities involved in the planning, construction, and operation of the Dakota Access Pipeline. We will refer to appellants collectively as "Energy Transfer."

four states. Throughout 2016, environmental and indigenous activists protested the construction of part of the pipeline underneath Lake Oahe in North Dakota. These protests against the DAPL are also referred to as the Standing Rock Protests because of Lake Oahe's proximity to the Standing Rock Reservation. In 2019, Energy Transfer filed suit against Greenpeace International and several other co-defendants in North Dakota over the Standing Rock Protests. The present action arises out of that suit.[2] Energy Transfer raised several tort claims against the defendants, including trespass to land and chattel, conversion, nuisance, defamation, tortious interference with business relations, and civil conspiracy.

Unicorn Riot describes itself as a Minnesota-based nonprofit media organization. Its stated goal is to "engage[] and amplif[y] the stories of social and environmental struggles from the ground up." Niko Georgiades is a member-journalist[3] of Unicorn Riot.

---

[2]     After oral argument but before publishing this opinion, the North Dakota suit went to trial. *Energy Transfer Equity, L.P. v. Greenpeace Int'l*, No. 30-2019-CV-00180 (N.D. Dist. Ct. Feb. 24, 2025). The jury returned a verdict in favor of Energy Transfer. The verdict presents a mootness question in this case—Energy Transfer may no longer need the documents it requested from Unicorn Riot if it achieved victory in the North Dakota suit without those documents. "[T]he general rule is that when, pending appeal, an event occurs that makes a decision on the merits unnecessary or an award of effective relief impossible, the appeal should be dismissed as moot." *In re Application of Minnegasco*, 565 N.W.2d 706, 710 (Minn. 1997). But Greenpeace has filed post-trial motions which are currently pending and has signaled its intent to appeal the verdict. Because there is a chance that the verdict will be overturned on appeal and there will be a retrial, there is still a live controversy that can be resolved in this case.

[3]     Unicorn Riot and Georgiades describe Georgiades as one of Unicorn Riot's "member journalists." Georgiades is both a member of Unicorn Riot and publishes articles through Unicorn Riot.

During the Standing Rock Protests, journalists from Unicorn Riot embedded themselves in the protests. Some members of Unicorn Riot, including Georgiades, were arrested during the protests, but all criminal charges were later dropped. These individuals purported to be engaged in newsgathering activities at the time of their arrests.

In March 2021, Energy Transfer—as part of its North Dakota lawsuit against the Greenpeace defendants—served subpoenas duces tecum on Unicorn Riot and Georgiades[4] seeking documents and communications related to their involvement in the Standing Rock Protests. The subpoenas were captioned in the name of the Fourth Judicial District in Hennepin County and invoked Minn. R. Civ. P. 45. Energy Transfer made 16 requests. Only five of those requests specifically mention defendants in the North Dakota suit; the other requests ask for documents and communications surrounding the DAPL protests generally. Unicorn Riot informed Energy Transfer that it would not respond to the subpoenas and directed Energy Transfer to its published reports and livestreams. Citing Minn. R. Civ. P. 45.03 and 45.04, Unicorn Riot stated that the subpoenas were "vague, overly broad and unduly burdensome" and sought "unpublished newsgathering materials" that were protected from compelled disclosure under the Minnesota Free Flow of Information Act ("MFFIA") and the First Amendment of the U.S. Constitution. Unicorn

---

[4] The subpoenas requested identical documents and information from respondents Unicorn Riot and Georgiades. Unicorn Riot and Georgiades have been united in their objections to Energy Transfer's subpoenas and subsequent motion to compel. Thus, we will refer to respondents collectively as "Unicorn Riot."

Riot also stated that it did not have any documents that were responsive to certain requests.[5]

In April and May of 2021, the parties conferred with each other regarding Unicorn Riot's objections to the subpoenas. The parties could not reach an agreement, and, on June 24, 2022, Energy Transfer filed a motion in Hennepin County District Court to compel production of the documents requested in the subpoenas.

Energy Transfer argued that Unicorn Riot's actions at the Standing Rock Protests "crossed the line from 'news gathering' to unlawful conduct." According to Energy Transfer, this means that Unicorn Riot lost the journalistic protections otherwise provided to it by the MFFIA and that any related materials are therefore discoverable. It claimed that some of the communications collected by Unicorn Riot were gathered in preparation of unlawful activity—mainly trespassing on DAPL construction sites—rather than legitimate newsgathering, and asked the court to grant its motion to compel those communications. In the alternative, Energy Transfer argued that, if the district court did not grant its motion to compel, then the district court must order Unicorn Riot to produce a privilege log as is ordinarily required under Minn. R. Civ. P. 45.

Unicorn Riot opposed Energy Transfer's motion to compel. Unicorn Riot stated that it was not required to comply with the subpoenas under the MFFIA because the

---

[5] Unicorn Riot stated then that it did not have any documents that were responsive to requests 6, 8, and 16. These requests sought documents and communications related to Unicorn Riot's policies on direct action; any financial relationship between Unicorn Riot and Greenpeace; and any "understandings, joint plans, or agreements" between Unicorn Riot and the defendants. Unicorn Riot now states that it also does not have any documents that are responsive to request 7, which seeks detailed information regarding any financial support Unicorn Riot received from Greenpeace in connection with the Standing Rock Protests.

subpoenas requested newsgathering materials that were protected from disclosure. Unicorn Riot argued that, although it may be held liable for its *actions* during the Standing Rock Protests, the MFFIA clearly protects Unicorn Riot from being compelled to disclose newsgathering materials in response to a subpoena.

The district court denied Energy Transfer's motion to compel but ordered Unicorn Riot to produce a log of all responsive documents and answers claimed as privileged.[6] The district court accepted Unicorn Riot's description of itself as "a 'non-profit media organization of journalists' that 'engages and amplifies the stories of social and environmental struggles from the ground up.' " It also found that Unicorn Riot embedded itself into the Standing Rock Protests in "much the same way that war correspondents embed themselves into military units." Accordingly, the district court determined that Unicorn Riot's sources and unpublished material were protected under MFFIA, denying Energy Transfer's motion to compel this information. But the district court also acknowledged that it was possible that Unicorn Riot "shielded responsive documents that

---

[6]    This requirement is commonly referred to as a "privilege log." Minnesota Rule of Civil Procedure 45.04(b)(1) states:

> When information subject to a subpoena is withheld on a claim that it is privileged . . . , the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Although the Rule does not use the term "privilege log," this is the general understanding of the requirement. *Cf.* Minn. R. Civ. P. 26 advisory comm. cmt.—2000 amendment (using the term "privilege log" to refer to a requirement containing nearly identical language to Rule 45).

are not protected by the privilege." Thus the district court deemed it appropriate to order Unicorn Riot to produce a privilege log.[7]

Both parties appealed the district court's order.[8] Energy Transfer appealed the denial of its motion to compel. Unicorn Riot appealed the order to the extent that it required Unicorn Riot to produce a privilege log. The court of appeals affirmed the district court's denial of the motion to compel under the MFFIA but reversed the district court's decision to require Unicorn Riot to produce a privilege log. *Energy Transfer LP v. Greenpeace Int'l*, 7 N.W.3d 153, 156 (Minn. App. 2024). Relying on our decision in *State v. Conrad* (*In re Hope Coalition*), 977 N.W.2d 651 (Minn. 2022), the court of appeals concluded that a district court may never order production of a privilege log or documents for *in camera* review[9] when a party claims information is privileged under the MFFIA. *Energy Transfer*, 7 N.W.3d at 163–64. It remanded for further proceedings regarding whether there was any

---

[7] The district court ordered Unicorn Riot to produce a privilege log under Minn. R. Civ. P. 26.02, but it should have instead cited Minn. R. Civ. P. 45.04. Rule 26.02(f) governs when a *party* to a proceeding withholds information that is otherwise discoverable based on a claim of privilege, whereas Rule 45.04(b) controls when a *non-party* who is subject to a subpoena claims that the information sought is privileged. Because Unicorn Riot is not a party to the North Dakota suit and Energy Transfer has not filed a separate suit against Unicorn Riot apart from the motion to compel, Rule 45.04 was the appropriate vehicle for ordering the privilege log.

[8] There were some interim appellate proceedings that are irrelevant to the questions we answer today. *See Energy Transfer LP v. Greenpeace Int'l*, No. A23-0257, 2023 WL 2662326 (Minn. App. Mar. 21, 2023).

[9] *In camera* review is "a hearing or review in the courtroom, hearing room, or chambers" that is not open to the general public. *Hope Coalition*, 977 N.W.2d at 654 n.1. "After *in camera* review, the content of evidence and statements by the judge and counsel are held in confidence, and transcripts are sealed." *Id.*

discoverable, non-privileged information requested in the subpoenas, and whether the production of such information would impose an undue burden or otherwise be objectionable under Minn. R. Civ. P. 45.03 or 45.04(a). *Energy Transfer*, 7 N.W.3d at 164. Energy Transfer petitioned our court for further review.

**ANALYSIS**

In this case, we must determine whether (1) privilege under the MFFIA extends to newsgatherers who engage in unlawful or tortious conduct not otherwise covered by the statutory exceptions in Minn. Stat. §§ 595.024–.025, and (2) a district court may order a party claiming privilege under the MFFIA to produce a privilege log. We answer each question in turn.

I.

Ordinarily, we will review a district court's decision to grant or deny a discovery request for an abuse of discretion. *See Underdahl v. Comm'r of Pub. Safety* (*In re Comm'r of Pub. Safety*), 735 N.W.2d 706, 711 (Minn. 2007). Whether an evidentiary privilege applies, however, is a question of law that we review de novo. *State v. Expose*, 872 N.W.2d 252, 257 (Minn. 2015). Because the district court's order addressed the applicability of the evidentiary privilege under the MFFIA, we review the applicability of that privilege de novo.

The Legislature passed the MFFIA in 1973, the year following *Branzburg v. Hayes*, 408 U.S. 665 (1972). Act of May 24, 1973, ch. 735, §§ 1–5, 1973 Minn. Laws 2201, 2201–02 (codified at Minn. Stat. §§ 595.021–.025). *Branzburg* held that the First Amendment does not grant reporters a testimonial privilege that exempts them from their

9

duty as citizens to appear before a grand jury and answer questions related to a criminal investigation. *Id.* at 689–90. The MFFIA was enacted in response to *Branzburg*. *See State v. Turner*, 550 N.W.2d 622, 630–31 (Minn. 1996) ("[I]t is clear that [the MFFIA] was a reaction to the *Branzburg* decision, and was intended to provide additional protection to reporters and their employers against subpoenas from litigating parties.").

The purpose of the MFFIA, Minn. Stat. §§ 595.021–.025, "is to insure and perpetuate, consistent with the public interest, the confidential relationship between the news media and its sources." Minn. Stat. § 595.022. The MFFIA gives the news media "the benefit of a substantial privilege not to reveal sources of information or to disclose unpublished information." *Id.* The MFFIA prohibits disclosure as follows:

> [N]o person who is or has been directly engaged in the gathering, procuring, compiling, editing, or publishing of information for the purpose of transmission, dissemination or publication to the public shall be required by any court, grand jury, agency, department or branch of the state, or any of its political subdivisions or other public body, or by either house of the legislature or any committee, officer, member, or employee thereof, to disclose in any proceeding the person or means from or through which information was obtained, or to disclose any unpublished information procured by the person in the course of work or any of the person's notes, memoranda, recording tapes, film or other reportorial data whether or not it would tend to identify the person or means through which the information was obtained.

Minn. Stat. § 595.023. There are two exceptions to the general prohibition on compelled disclosure under the MFFIA: the first pertains to information that is clearly relevant to a crime, and the second pertains to information that will lead to relevant evidence regarding actual malice in a defamation action. *See* Minn. Stat. §§ 595.024–.025.

10

Energy Transfer does not dispute that Unicorn Riot qualifies as a news media organization for purposes of the MFFIA. Nor does Energy Transfer assert that either of the statutory exceptions to the MFFIA's protections applies here. Instead, the question is whether the MFFIA prohibits the compelled disclosure of newsgathering materials if the newsgatherer engages in unlawful or tortious conduct not otherwise covered by the statutory exceptions in Minn. Stat. § 595.024–.025. We turn to that question below.

A.

The question of whether the MFFIA protects a newsgatherer against compelled disclosure if the newsgatherer engages in unlawful or tortious conduct not otherwise governed by the statutory exceptions in Minn. Stat. §§ 595.024–.025 is a question of statutory interpretation. The goal of statutory interpretation is to effectuate legislative intent by reading the statute as a whole. *Hope Coalition*, 977 N.W.2d at 657. We look first to the plain meaning of the statute to decide whether the text is ambiguous. *Id.* If the statute is unambiguous, our analysis will end there. *Id.*

Energy Transfer argues that—independent of the statutory exceptions to the MFFIA contained in Minn. Stat. §§ 595.024–.025—the MFFIA impliedly exempts from coverage persons who commit an unlawful or tortious act while engaging in protected newsgathering activity. As the court of appeals aptly pointed out, Energy Transfer's argument requires reading the word "lawful" into section 595.023. *Energy Transfer*, 7 N.W.3d at 160. This would make it so that only the *lawful* "gathering, procuring, compiling, editing, or publishing of information" is protected. *See* Minn. Stat. § 595.023. We will not add words to the plain language of a statute. *See Energy Pol'y Advocs. v. Ellison*, 980 N.W.2d 146,

11

158–59 (Minn. 2022). Section 595.023 does not qualify its protection by specifying that it applies only to information obtained in a lawful manner. The plain, unqualified language of the MFFIA is clear.

Moreover, the issue in this case is what the law requires Unicorn Riot to disclose under the MFFIA, not whether Unicorn Riot caused any harm to Energy Transfer. Energy Transfer repeatedly claims that Unicorn Riot should not be exempt from consequences for its actions during the Standing Rock Protests. But, by opposing the subpoenas, Unicorn Riot is not claiming exemption from criminal or civil liability. Rather, Unicorn Riot is seeking protection for the *information* it collected through newsgathering while allegedly trespassing with Standing Rock protestors. The language of the MFFIA in Minn. Stat. § 595.023 plainly applies to information of the kind sought in this case, regardless of Energy Transfer's allegations about how Unicorn Riot obtained it. And Energy Transfer has not alleged that Unicorn Riot's actions otherwise fall under the statutory exceptions in Minn. Stat. §§ 595.024–.025. If Energy Transfer contends that Unicorn Riot caused actionable harm during the Standing Rock Protests, then it may sue Unicorn Riot based on those claims.

B.

The exceptions in sections 595.024 and 595.025—while not alleged by Energy Transfer to apply—support our conclusion. These sections provide two specific situations in which information protected by the MFFIA may be subject to disclosure. The exceptions apply only when either (a) "there is probable cause to believe that the specific information sought . . . is clearly relevant to a gross misdemeanor or felony" or "to a misdemeanor so

12

long as the information would not tend to identify the source of the information or the means through which it was obtained," Minn. Stat. § 595.024, subd. 2(1); or (b) "the identity of [a] source will lead to relevant evidence on the issue of actual malice" in a defamation action, Minn. Stat. § 595.025, subd. 1.  And this information may be obtained only if there are no other means of procuring the information that would be less destructive to First Amendment rights.[10]  Minn. Stat. §§ 595.024, subd. 2(2), 595.025, subd. 2(b).

Exceptions expressed in a law should be construed to exclude all others.  *Citizens State Bank v. Brown*, 849 N.W.2d 55, 61 (Minn. 2014); *see also* Minn. Stat. § 645.19 (2024).  The Legislature provided two express exceptions to the MFFIA privilege.  Energy Transfer asks us to create a third exception—one that would subject otherwise protected information to disclosure when the newsgatherer commits an unlawful act or tort.  The Legislature may enact such an exception, just as it did with the two exceptions that are already written into the MFFIA.  But we will not create our own exception to a statutorily created right when the Legislature declined to do so in the statutory text.

We hold that the plain language of the MFFIA protects Unicorn Riot's newsgathering activities during the Standing Rock Protests.  Nothing in the statutory text leads us to believe that the privileged information that Unicorn Riot collected during the Standing Rock Protests should be excepted from the prohibition on disclosure under the MFFIA.

---

[10]    For the exception in section 595.024, there is an additional requirement that there must be "a compelling and overriding interest requiring the disclosure of the information where the disclosure is necessary to prevent injustice."  Minn. Stat. § 595.024, subd. 2(3).

13

II.

We now turn to the second question in this case: whether the district court had the authority to require Unicorn Riot to produce a privilege log so that Energy Transfer may contest the validity of the privilege claim. When a district court interprets the scope of a statutory privilege, we review that interpretation de novo. *State v. Zais*, 805 N.W.2d 32, 36 (Minn. 2011).

Minnesota Rule of Civil Procedure 45.04(b)(1) addresses how a person responding to a subpoena may make a claim of privilege:

> When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

This requirement is commonly referred to as a "privilege log," which requires the person or entity being subpoenaed to collect and categorize all potentially responsive documents and explain why each document is privileged. *See, e.g.*, *Energy Pol'y Advocs.*, 980 N.W.2d at 151 (describing how the Attorney General "submit[ted] a privilege log," in which "[t]he Attorney General sorted the contested documents into 18 categories, identifying the general contents of each category as well as the justification for declining to release them"); *Lawrence v. Rihm Fam. Cos., Inc.* (*In re Lawrence*), 954 N.W.2d 597, 600 (Minn. App. 2020) ("Petitioners provided the district court with a privilege log of documents, identifying the transferred communications potentially subject to privilege. The log consisted of nearly 800 email exchanges and attachments sent between March 2016 and April 2017."). District courts have the authority to determine the level of detail appropriate

14

for a privilege log in a particular case. *See* Minn. R. Civ. P. 26 advisory comm. cmt.—2000 amendment (discussing the district court's discretion with respect to privilege logs). *Compare Energy Pol'y Advocs.*, 980 N.W.2d at 151 (sorting documents into categories and identifying a justification for the privilege), *with Lawrence*, 954 N.W.2d at 600 (privilege log contained nearly 800 emails).

At issue here is whether the district court may order the production of a privilege log when the person or entity responsible for producing the privilege log claims that the information sought is protected from disclosure under the MFFIA. The MFFIA prohibits "any court" from ordering disclosure of "any unpublished information" in "any proceeding." Minn. Stat. § 595.023. In its order, the district court signaled its intent to use the privilege logs to later decide whether Unicorn Riot must produce documents for *in camera* review.

The court of appeals reversed the district court's order requiring Unicorn Riot to produce a privilege log because it held that a district court may not order a privilege log when such information is privileged under the MFFIA. *Energy Transfer*, 7 N.W.3d at 163–64. Citing our decision in *Hope Coalition*, 977 N.W.2d 651, the court of appeals reasoned that "[a]lthough the MFFIA protects a different type of information—newsgathering information rather than counseling records—it similarly creates a broad statutory grant of protection with narrow enumerated exceptions."[11]

---

[11]    We do not rely on *Hope Coalition*—which instead concerned the sexual assault counselors' statutory privilege—in reaching our decision here. *See Hope Coalition*, 977 N.W.2d at 653. This opinion should be in no way construed as modifying the impact of *Hope Coalition*.

15

*Energy Transfer*, 7 N.W.3d at 163–64. The court of appeals remanded the case, however, for the district court to determine (1) whether the subpoenas requested any discoverable information to which Unicorn Riot has not responded or asserted privilege, and (2) if so, whether such requests impose an undue burden or are otherwise objectionable. *Id.* at 164.

A.

We find nothing in the text of the MFFIA that would prevent the district court from ordering production of a privilege log. With respect to many of Energy Transfer's requests, we agree with the court of appeals that it is difficult to see how Unicorn Riot could produce a privilege log that would allow Energy Transfer to contest the validity of the privilege claims without identifying any privileged information. But we disagree with the court of appeals' conclusion that the district court may *never* order a privilege log when a party claims privilege under the MFFIA.

Producing a privilege log should not require a party to disclose privileged information in the log itself. And the MFFIA clearly protects parties from having to disclose privileged information to the district court. We recognize that the MFFIA prevents "any court" from ordering disclosure of "any unpublished information" in "any proceeding"—plainly including *in camera* review. But that does not mean that a party claiming privilege under the MFFIA is never required to respond to any request for information beyond claiming the privilege.

A party claiming privilege under the MFFIA should have the same protections as any other party responding to a request for discovery, and the district court retains the same authority to limit the scope of a privilege log in a case involving the MFFIA. We note that

16

Unicorn Riot initially objected to the subpoenas as "vague, overly broad and unduly burdensome."  We agree that, should the district court find that producing a privilege log[12] for any of Energy Transfer's requests would impose an undue burden on Unicorn Riot, then Unicorn Riot should not be required to respond to or produce a privilege log pertaining to those requests.  *Cf.* Minn. R. Civ. P. 45.03(a) ("A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court . . . shall enforce this duty . . . .").

We also recognize that, given the broad protections provided by the MFFIA, a privilege log in this case likely will be less revealing, and take a different form, than it would in a case where a party claims privilege under a different, less protective law.[13]  The

---

[12]     We note that, irrespective of the MFFIA's protections, a district court may consider whether asking a news media organization to provide all of its unpublished information in response to a subpoena for a case to which it is not a party might be in itself unduly burdensome.  *Cf. Stecklein & Rapp Chartered v. Experian Info. Sols., Inc.*, 113 F.4th 858, 862 (8th Cir. 2024) (affirming the district court's decision to quash subpoenas duces tecum as unduly burdensome because so much of the requested information was irrelevant and invaded the privacy interests of third parties).

[13]     For example, the attorney-client privilege protects only confidential communications concerning legal advice.  *See Thompson v. Polaris, Inc.* (*In re Polaris, Inc.*), 967 N.W.2d 397, 407 (Minn. 2021) (explaining that the attorney-client privilege protects communications that provide legal advice); *see also* Minn. Stat. § 595.02, subd. 1(b) (2024) (prohibiting an attorney from providing testimony on communications offering legal advice without the client's consent).  A privilege log involving attorney-client communications could state the type of communication (e-mail, text message, etc.), the parties to the communication, and the  purpose of the communication—all without violating the attorney-client privilege.  This is not the case here, where the privilege protects all unpublished information including "notes, memoranda, recording tapes, film or other reportorial data" and "the person or means from

17

MFFIA protection extends to any unpublished information, including "notes, memoranda, recording tapes, film or other reportorial data." Minn. Stat. § 595.023. We understand the court of appeals' concern that there may be no "conceivable method of preparing a privilege log that would not result in the disclosure of privileged information." *Energy Transfer*, 7 N.W.3d at 163. And district courts should be skeptical when reviewing a party's request for information when the opponent claims privilege under the MFFIA, particularly when a party requests a vast amount of information that is very clearly privileged, as Energy Transfer did here.[14] But the difficulty of preparing a privilege log in

or through which information was obtained." Minn. Stat. § 595.023. The MFFIA very likely protects the privileged party from having to disclose, for example, the parties to the communication and limits how much the party must disclose in other areas.

[14] Take, for instance, request 2:

Documents and communications, including video and audio recordings, concerning actual or planned Direct Action relating to Energy Transfer, Dakota Access, and/or DAPL, including but not limited to any such Direct Action on August 10, August 11, August 12, September 3, September 6, September 9, September 13, September 25, October 27, and November 20, 2016.

To the extent that the information sought by this request is unpublished (and therefore unavailable as part of Unicorn Riot's reporting), it is difficult to imagine how Unicorn Riot could describe "the nature" of this unpublished information in accordance with Minn. R. Civ. P. 45.04(b)(1) without using any unpublished information. This request, and many of Energy Transfer's other requests, would require Unicorn Riot to go back through all of its unpublished—and hence privileged—information from nearly a decade ago only to inform the district court that it has created a privilege log consisting of information that is clearly privileged. We do not see how that would be helpful to Energy Transfer in its underlying litigation against Greenpeace and, further, there are concerns that doing so would place an undue burden on Unicorn Riot. But we ultimately leave that decision to the district court on remand.

18

this case does not mean that the MFFIA prevents production of a privilege log—nor that the Rules of Civil Procedure that require a party claiming privilege to produce a privilege log do not apply. Accordingly, we hold that the court of appeals erred by concluding that the district court lacks authority to order production of a privilege log under the MFFIA.

B.

We briefly address Unicorn Riot's argument that, even if the MFFIA does not prevent the district court from ordering production of the privilege log, the First Amendment to the United States Constitution and Article I, Section 3, of the Minnesota Constitution[15] nonetheless provide that protection. Unicorn Riot has provided no authority to support this proposition, and we have found none. Rather, courts regularly order privilege logs even when a party claims journalistic privilege[16] under the First Amendment.[17] *See, e.g.*, *In re Application of Chevron Corp.*, 736 F.Supp.2d 773, 782 (S.D.N.Y. 2010) (stating that the journalist "advanced no persuasive reason why he should not be compelled to claim privilege with respect to documents and things in the same

---

[15]    We have interpreted Article I, Section 3, of the Minnesota Constitution as affording the same protection as the First Amendment. *See Turner*, 550 N.W.2d at 628–29; *Cohen v. Cowles Media Co.*, 479 N.W.2d 387, 390–91 (Minn. 1992).

[16]    We have never held that the First Amendment or the Minnesota Constitution include any special privilege for reporters. *See Turner*, 550 N.W.2d at 628–29. We decline to address that argument here because, even if such a privilege exists, it would not shield Unicorn Riot from having to produce a privilege log in this case. *See, e.g.*, *id.*; *Cohen*, 479 N.W.2d at 390–91.

[17]    We rely on federal cases in addressing this question because we have never addressed it in Minnesota, and we have traditionally looked to federal law when determining the extent of the freedom of the press.

19

manner as any other litigant"); *Mosley v. City of Chicago*, 252 F.R.D. 445, 448–49 (N.D. Ill. 2008) (rejecting the argument that the journalistic privilege protects a party from having to prepare a privilege log); *Las Vegas Sun, Inc. v. Adelson*, No. 3:21-MC-17, 2021 WL 6621290, at *1 (D. Conn. Sept. 2, 2021) (discussing a party's failure to produce a privilege log even though the party invoked journalistic privilege). We see no reason to conclude that either the First Amendment or Article I, Section 3, of the Minnesota Constitution prevent a district court from ordering a journalist to produce a privilege log.

We therefore hold that the district court may order a party claiming privilege under the MFFIA to produce a privilege log, and we reverse the decision of the court of appeals with respect to its determination that the district court may not order a privilege log in the circumstances presented here. At the same time, we recognize that the district court has authority to define the scope of a privilege log, especially when much of the requested information is clearly privileged and producing a privilege log would impose an undue burden on the party covered by the privilege. We thus remand to the district court and direct that court to use its discretion to determine whether and to what extent Unicorn Riot should be required to produce privilege logs in response to Energy Transfer's subpoenas, bearing in mind that producing a privilege log or responding to the subpoenas in any capacity may impose an undue burden or be otherwise objectionable under Minn. R. Civ. P. 45.03 or 45.04(a)(4). The district court will retain authority to order Unicorn Riot to produce privilege logs as it sees fit, consistent with the guidance we have provided in this opinion.

**CONCLUSION**

For the foregoing reasons, we affirm the decision of the court of appeals in part, reverse in part, and remand to the district court for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded to the district court.

GAÏTAS, J. took no part in the consideration or decision of this case.